S98A1455. BRYANT v. THE STATE.
S98A1456. HALE v. THE STATE.
S98A1457. WADE v. THE STATE.
(507 SE2d 451)

SEARS, Justice.

Following their joint trial, appellants Brandon Bryant, Josiah Hale, and Quincy Wade appeal their convictions for felony murder and attempted armed robbery.[1] Having reviewed the record, we con-

---

[1] The crimes were committed on April 18, 1995. Appellants were each indicted on August 10, 1995, on three counts of felony murder with the underling felonies being aggravated battery, aggravated assault, and attempted armed robbery; two counts of aggravated assault; and one count each of malice murder and armed robbery. A joint trial was held on September 23-27, 1996. All three appellants were found guilty on all three counts of felony murder, and of attempted armed robbery. Each appellant was sentenced to life imprisonment for the felony murder conviction based upon the underlying felony of aggravated battery, and the other two felony murder convictions were merged into that conviction. The aggravated battery convictions were vacated by operation of law. Each appellant also was sentenced to a consecutive ten-year sentence for armed robbery. Bryant, Hale and Wade filed new trial motions on October 22, October 16, and October 23, 1996, respectively. The transcript was certified on January 4, 1997. The new trial motions were denied on February 24, 1998. Bryant, Hale and Wade filed their notices of appeal on February 24, March 25, and

clude that the verdict is sufficiently supported by the evidence, and that the trial court did not err in denying appellants' motions to sever their trials from that of their co-defendants. We also conclude that the trial court did not err in either its evidentiary rulings, or its rulings on challenges raised during voir dire. Therefore, we affirm.

Late in the evening of April 18, 1995, appellant Bryant drove his car to a Bartow County convenience store managed by the murder victim, Shirley Hayes. Riding in the car with Bryant were appellants Hale and Wade, and Shawndray Carson.[2] Bryant positioned his car so that it was facing away from the building. While Bryant remained in the vehicle, the other three men went inside the store. Carson shot Hayes in the head. Appellants Hale and Wade attempted to remove money from the cash register, but were unsuccessful because they could not open the register drawer. Appellants then left the store and drove off.

At that same time, Robert McCombs and his daughter were driving past the convenience store. They witnessed the three men run from the store, get into a vehicle, and drive off quickly with the vehicle's lights off. One of the men was carrying a rifle when he exited the store. The McCombses followed the vehicle long enough to obtain its license plate number; they stopped their pursuit when they were fired upon by someone in the fleeing car. The McCombses then returned to the convenience store, where they found Hayes on the floor behind the counter, badly wounded but still alive.

Hayes was hospitalized from April 18, 1995 until June 1, 1995. During her hospital stay, she underwent two surgeries, remained in intensive care for several weeks, was on a ventilator for approximately two weeks, and contracted pneumonia. Hayes also was treated with medication to prevent blood clotting that could result from the prolonged immobility required for her recuperation. After her release from the hospital, Hayes was placed on a physical therapy regimen, and used a walker and wheelchair to move about. On June 25, 1995, Hayes died of a pulmonary embolism while at her home. Evidence introduced at trial showed that the pulmonary embolism resulted when a blood clot that originated in her leg became dislodged and traveled to her pulmonary artery, blocking the transfer of blood to the heart.

After their arrests, each appellant gave an in-custody interview in which he stated his level of involvement in the attempted robbery and the shooting of Hayes. Sonja Hicks, an acquaintance of appellants, testified at trial that, prior to the appellants' arrests and while

---

March 18, 1998, respectively. The appeals were docketed in this Court on June 4, 1998, and submitted for decision without oral argument on July 27, 1998.

[2] Carson was tried separately and ultimately pled guilty to the charges against him.

in appellant Wade's presence, appellant Bryant told her that while he sat in the car, the others went into the convenience store, where Carson shot Hayes while Wade and Hale attempted unsuccessfully to open the cash register.

1. The evidence discussed above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that appellants are guilty of felony murder and attempted armed robbery.[3]

(a) Appellants urge that Hayes possessed certain risk factors not directly related to her gunshot wounds that may have contributed to her suffering a pulmonary embolism. In making this argument, appellants point to medical evidence introduced at trial that risk factors for pulmonary embolism include obesity, use of estrogen, and cancer, and that Hayes was slightly obese, used estrogen, and had previously been treated for cancer. However, we note that additional medical evidence introduced at trial showed that the most common risk factor for pulmonary embolism is prolonged immobility, such as that experienced by Hayes during her recovery from appellants' attack. At trial, Hayes's physician testified that her obesity was not, in and of itself, a risk factor; rather, it only became a risk factor to the extent that she was immobilized by it. The evidence indicated that despite being obese, Hayes was active in her lifetime, and did not become immobile until she was wounded during appellants' attack. Following that attack, Hayes underwent a long period of recuperation that required a great deal of immobility. Furthermore, Hayes's physician testified that her previous cancer could not have contributed to her pulmonary embolism, because she had no malignancy at the time of her death. Additional testimony showed that her dosage of estrogen was too low to have put her at risk for pulmonary embolism. Hayes's treating pulmonologist testified that the facts discussed above led him to conclude that, before being injured in appellants' attack, her risk of suffering a pulmonary embolism was "extremely remote."

Based upon this evidence, a rational jury could conclude that even though Hayes had previously suffered from some conditions that might have put her at risk for pulmonary embolism, the injuries she sustained in appellants' attack on her either (1) "directly and materially contributed to the happening of a subsequent accruing immediate cause [of death]," or (2) "materially accelerated the death, although [it was] proximately occasioned by a pre-existing cause."[4] In either event, the evidence was sufficient to authorize the jury's guilty

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] *Tankersley v. State*, 261 Ga. 318, 323 (404 SE2d 564) (1991); see *Wilson v. State*, 190 Ga. 824, 829 (10 SE2d 861) (1940).

verdicts.

(b) Appellant Bryant, the driver of the car who remained outside of the convenience store during the attempted robbery, claims that he did not know that his co-defendants intended to commit armed robbery. He claims that the State merely proved his presence at the scene of the crime, an insufficient basis upon which to affirm his convictions.[5] However, the evidence showed that, in his custodial interview, Bryant admitted that he knew the others were armed and were going inside the store to rob it. The evidence also showed that, prior to arriving at the convenience store, appellants discussed and planned their robbery, and actually searched out the best store to rob. Further, McCombs testified that, as the other three appellants exited the store, Bryant's car was positioned facing away from the door and toward the adjacent roadway. Thus, Bryant had backed his car in, suggesting that he had positioned it for a fast getaway after the robbery. Thus, the evidence showed much more than Bryant's mere presence at the scene of the crime, and based upon that evidence, the jury was authorized to conclude that Bryant aided and abetted his co-defendants in attempting to commit the armed robbery which lead to Hayes's murder.

2. The trial court did not abuse its discretion in denying Bryant's and Hale's motions to sever their trials from that of their co-defendants. In deciding a motion to sever, a trial court must consider (1) whether a joint trial will create confusion regarding evidence or law; (2) whether there is danger that evidence implicating one defendant will be considered against co-defendants, despite limiting instructions; and (3) whether the co-defendants will press defenses that are antagonistic to one another.[6] Regarding the first prong, Bryant and Hale do not attempt to explain on appeal how their joint trial created confusion of evidence or law.

Regarding the second prong, it is urged that the introduction of appellants' custodial statements detailing their respective degrees of involvement in the crime was harmful because the statements implicated the declarants' co-defendants. However, each co-defendant's custodial statement was extensively redacted prior to its introduction, in accordance with *Bruton v. United States*.[7] When the appellants' statements were introduced, the trial court clearly instructed the jury that each statement was admissible only against the declarant, and did not impact upon the adjudication of the other co-defendants' guilt or innocence. After the admission of all the custo-

---

[5] *Johnson v. State*, 269 Ga. 840 (506 SE2d 374) (1998); *Williams v. State*, 256 Ga. 460, 461 (349 SE2d 695) (1986).

[6] *Jones v. State*, 243 Ga. 584, 586 (255 SE2d 702) (1979); see OCGA § 17-8-4.

[7] 391 U. S. 123, 130-132 (88 SC 1620, 20 LE2d 476) (1968).

dial statements, the trial court again gave the jury this limiting instruction. Having reviewed the record, we conclude that the trial court's prophylactic measures adequately guarded against the danger that appellants' incriminating custodial statements might be considered against non-declarant co-defendants.[8]

Finally, regarding the third prong of this analysis, Bryant and Hale do not explain on appeal how their defenses were antagonistic to each other. It would appear that the joint trial did not impact them in this regard, since none of the co-defendants presented any evidence at trial. Accordingly, for the reasons discussed above, we conclude that the trial court did not abuse its discretion in denying the motions to sever.

3. Appellant Wade urges that the trial court erred by admitting Hayes's death certificate into evidence, because its statements concerning the cause of Hayes's death were inadmissible hearsay. A review of the transcript, however, shows that Wade did not raise this objection at trial, and it cannot be raised for the first time on appeal.[9]

Appellant Wade also urges that the trial court erred by permitting the jury to view a redacted version of the death certificate during deliberations, because it served as a " 'continuing witness' " concerning the cause of Hayes's death. The only portion of the certificate that the trial court allowed to be viewed during deliberations concerned the death itself, and the immediate causes of the death; the portion detailing that Hayes's injuries were sustained in an attempted armed robbery was properly redacted when the certificate was tendered into evidence.[10]

The " 'continuing witness' " rule prohibits writings from going out with the jury when the evidentiary value of such writings depends " 'on the credibility of the maker.' "[11] Documents that are prohibited by the " 'continuing witness rule' " from going out with the

---

[8] Addressing appellants' specific contentions, appellant Bryant's character was not implicated in appellant Hale's statement regarding gang membership or drug use. The only mention of gang membership in Hale's custodial interview was made when Hale denied knowing whether co-defendant Carson was a member of a gang. That statement did not indicate that Bryant was a gang member, and had no adverse effect on him. Similarly, Hale's statement that he (Hale) "was riding around and went and got some weed," did not implicate drug use by Bryant; nor did it taint Bryant's character.

[9] *Waldrip v. State*, 266 Ga. 874, 879 (471 SE2d 857) (1996). We note that the hearsay objection was raised at trial by co-defendant Bryant, but it was not adopted by appellant Wade, who seeks to raise it here. We also note that even if admission of the death certificate did violate the rule prohibiting hearsay evidence, any resulting error would be deemed harmless because the certificate's statements concerning the cause of death were cumulative of medical testimony introduced at trial also concerning the cause of death. See *Griffin v. State*, 265 Ga. 552, 554 (458 SE2d 813) (1995).

[10] See *Thomas v. State*, 257 Ga. 24, 25 (354 SE2d 148) (1987).

[11] *Flournoy v. State*, 266 Ga. 618, 619 (469 SE2d 195) (1996) (Fletcher, P. J., concurring specially).

jury include answers to written interrogatories,[12] written dying declarations,[13] and signed statements of guilt.[14] These documents, which generally contain their makers' assertions of purported truths,[15] are ascribed evidentiary value only to the extent that their makers are credible. However, unlike these examples, a death certificate properly completed by a medical examiner is considered prima facie evidence of both the death itself and the cause of the death.[16] The prima facie evidentiary value ascribed to a death certificate's representation of a death and its causes is not dependent upon the medical examiner's credibility. In fact, a death certificate is accorded initial prima facie evidentiary value regardless of the examiner's credibility.[17] For this reason, we conclude that death certificates that are properly redacted to show only prima facie evidence of the fact that a death occurred and the causes of the death are not subject to the " 'continuing witness rule.' "

4. The trial court did not err in denying appellant Bryant's two challenges for cause raised during voir dire. One of the challenges was directed at a juror who, Bryant alleges, stated during voir dire that she is the mother-in-law of a GBI agent who investigated Hayes's murder. While there is no evidence of record to support Bryant's contention,[18] we nonetheless conclude that even if the contention is true, the trial court did not err in denying the challenge for cause. As stated in OCGA § 15-12-163 (b) (4), a juror need only be struck for cause when he or she is in a close relationship to the *prosecutor* of a criminal trial, or the accused, or the victim. Here, if Bryant's allegations are true, the GBI agent was not a prosecutor, but rather merely an officer of the State assigned to investigate the crime for which appellant was being tried. As such, the GBI agent was a potential witness at trial. However, it is established that a potential

---

[12] Id.; *Shedden v. Stiles*, 121 Ga. 637, 640 (49 SE 719) (1905).

[13] *Flournoy*, supra; *Strickland v. State*, 167 Ga. 452, 460-462 (145 SE 879) (1928).

[14] *Flournoy*, supra; *Royals v. State*, 208 Ga. 78, 81 (65 SE2d 158) (1951).

[15] See Milich, Georgia Rules of Evidence, § 19.8, p. 328 (West 1995) ("[I]f the writing is little more than the reduction of or substitute for the person's oral statements, then the writing . . . is not given to the jury.").

[16] See *Thomas*, supra.

[17] This is not to say, however, that a death certificate's value as prima facie evidence of a death and its causes could not be rebutted by showing the medical examiner's lack of credibility or veracity.

[18] The voir dire of potential jurors was not transcribed, and the record contains only a transcription of the challenges raised to certain potential jurors, and the court's response thereto. We take this opportunity to emphasize that if defense counsel want voir dire to be taken down, they must make a specific request to that effect. If counsel raise issues on appeal relating to voir dire, they also must transcribe the voir dire in order for there to be an appellate review, as an appellant carries the burden of showing error by the record. *Carr v. State*, 267 Ga. 701, 707 (482 SE2d 314) (1997).

juror need not be automatically dismissed for cause on that basis.[19]

For these same reasons, we conclude that the trial court did not err in refusing to dismiss for cause a second juror who, several years before trial, was divorced from the lead criminal investigator assigned to this case. Moreover, we note that in response to appellant's challenge for cause, the trial court stated on the record that during voir dire, the juror clearly stated her ability to serve fairly and impartially on the jury. Hence, it was not error to deny appellant's attempted strikes.[20]

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 23, 1998.

*Barry S. Haney,* for appellant (case no. S98A1455).

*Gregory S. Dickson, Levinson & Paul, Christopher G. Paul,* for appellant (case no. S98A1456).

*Pierce Winningham III,* for appellant (case no. S98A1457).

*T. Joseph Campbell, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jayson Phillips, Assistant Attorney General,* for appellee.

---

[19] *Taylor v. State,* 243 Ga. 222, 224 (253 SE2d 191) (1979). See *Spence v. State,* 238 Ga. 399, 400 (233 SE2d 363) (1977).

[20] *Foster v. State,* 248 Ga. 409, 411 (283 SE2d 873) (1981). We note that the lead investigator is listed as the "prosecutor" on the indictments against appellants, indicating that he participated in the State's presentation of evidence to the grand jury (he did not serve as the prosecutor at appellants' trials, though). Thus, it could be argued that he falls within the mandate of OCGA § 15-12-163 (b) (4) that jurors closely related to prosecutors should be struck for cause. However, we need not address this issue, as the juror in question here was divorced from the lead investigator, and thus no longer closely related to him.