[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 6, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-11078

_____

D. C. Docket No. 02-00077-CV-HLM-4

QUINCY WADE,

Petitioner-Appellant,

versus

RALPH BATTLE,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 6, 2004)**

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Petitioner Quincy Wade, a Georgia state prisoner, appeals the district

court's denial of his § 2254 habeas petition. This appeal concerns whether the

district court correctly determined that Wade's § 2254 petition was untimely filed

under the one-year statute of limitations established by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2244(d)(1). After review and oral argument, we affirm.

## I. BACKGROUND

To determine whether Wade's § 2254 petition was timely filed, we must review in detail what happened in the state courts before Wade filed his § 2254 petition.

### A. Wade's Convictions

On September 27, 1996, after a jury trial in the Superior Court of Bartow County, Georgia, Wade was convicted of felony murder and attempted armed robbery. The state trial court sentenced Wade to life imprisonment plus ten years. On November 23, 1998, the Georgia Supreme Court affirmed Wade's convictions and sentences on direct appeal. Bryant v. State, 270 Ga. 266, 507 S.E.2d 451 (1998). Wade's judgment of conviction became "final" on February 22, 1999, when the ninety-day period in which to seek certiorari from the United States Supreme Court expired. See 28 U.S.C. § 2244(d)(1); Jackson v. Sec'y for Dep't of Corr., 292 F.3d 1347, 1349 (11th Cir. 2002). Thus, AEDPA's one-year limitation period in § 2244(d)(1) began to run on February 22, 1999.

**B.     Wade's State Habeas Petition**

On August 25, 1999, Wade, incarcerated in Hancock State Prison, signed a state habeas petition that the Clerk of the Superior Court of Hancock County, Georgia, received and filed on September 2, 1999. Thus, Wade's AEDPA clock ran at least for 184 days from February 22, 1999 until August 25, 1999.

On October 19, 2000, after an evidentiary hearing, the Superior Court of Hancock County denied Wade's state habeas petition. In its October 19, 2000 order, the state habeas court expressly advised Wade that if he desired to appeal, he had to file within thirty days (1) an application for a Certificate of Probable Cause ("CPC") in the Georgia Supreme Court, and (2) a notice of appeal with the Clerk of the Superior Court of Hancock County, as follows:

> If Petitioner desires to appeal this order, Petitioner must file a written application for a certificate of probable cause to appeal with the Clerk of the Supreme Court of Georgia within thirty (30) days from the date of the filing of this order and also file a notice of appeal with the Clerk of the Superior Court of Hancock County within the same thirty (30) day period.

**C.     Wade's CPC Application**

Wade did not file a CPC application with the Georgia Supreme Court or a notice of appeal with the Clerk of the state habeas court within thirty days. The record does contain (1) a CPC application signed by Wade on January 7, 2001,

which was eighty calendar days after the state habeas court denied his habeas petition, and (2) a notice of appeal stamped-filed on January 17, 2001 in the Superior Court of Hancock County, which was ninety days after the state habeas court ruled. The CPC application is not stamped filed by the Georgia Supreme Court, but Wade contends he signed and submitted it on January 7, 2001.

On January 22, 2002, the Clerk of the Georgia Supreme Court sent Wade a form letter advising him that his CPC application was being returned because it was untimely. The text at the top of the letter reads:

> Due to the high volume of mail received by this office last year, we can no longer answer each individual letter as we have in the past. Listed below are the most common requests; we will check the one most appropriate for you.

There were two check marks on the letter. Next to the first one, the text reads: "I am returning your documents to you for your further use." Next to the second check mark, the text states:

> In order to seek appeal of a habeas corpus case, two filings must be made, both **within 30 days of entry of the judgment** sought to be appealed: (1) a notice of appeal must be filed in the trial court, and (2) an application for a certificate of probable cause must be filed in this Court.
> I am returning your application for certificate of probable cause as it would be dismissed as untimely under Fullwood v. Sivley, 271 Ga. 248 (1999).
> In order to obtain an out-of-time notice of appeal, you must obtain an order from the trial court allowing you to do so.

4

Thus, the Georgia Supreme Court, through its Clerk, expressly advised Wade that it was returning Wade's untimely CPC application.

As noted earlier, Wade also filed an untimely notice of appeal in the state habeas court on January 17, 2001. On May 3, 2002, the Georgia Supreme Court received the record from the state habeas court. Thus, on May 13, 2002, the Clerk of the Georgia Supreme Court sent Wade another form letter that advised Wade that his "application is under consideration" as follows:

> The record and transcript from the habeas trial court were received by this Court on 5/3/02 and your application is under consideration. This office is unable to tell you when there will be a decision from the Court, but when there is one, you will be mailed a copy immediately.

In addition to sending this letter, the Clerk of the Georgia Supreme Court sent a letter to the State indicating that the Georgia Supreme Court was docketing Wade's CPC application as of May 3, 2002, well over a year after Wade submitted it on January 7, 2001. The letter from the Clerk of the Georgia Supreme Court reads: "The above styled Application for Certificate of Probable Cause to appeal the denial of habeas corpus has been docketed in the Supreme Court today and assigned the case number shown above."

On October 29, 2002, the Georgia Supreme Court then dismissed Wade's CPC application on the basis that Wade had failed to comply with O.C.G.A. § 9-

5

14-52(b).  On November 11, 2002, Wade signed a motion for reconsideration, which the Georgia Supreme Court summarily denied on December 13, 2002.

## D.    Wade's § 2254 Petition

On February 25, 2002, Wade, pro se, signed the instant 28 U.S.C. § 2254 petition alleging ineffective assistance of trial and appellate counsel and Fourth, Fifth, and Fourteenth Amendment violations.  The district court received and filed Wade's § 2254 petition on April 3, 2002.

On May 23, 2002, Respondent Ralph Battle, warden of the Hancock State Prison, moved to dismiss Wade's § 2254 petition for lack of exhaustion, or alternatively, as untimely filed.[1]  First, Battle argued that the district court should dismiss Wade's petition for lack of exhaustion, given that Wade was currently seeking an available state remedy by pursuing a CPC application in the Georgia Supreme Court.  Wade's § 2254 petition was filed on February 25, 2002, which is before the Georgia Supreme Court docketed his CPC application on May 3, 2002 and dismissed it on October 29, 2002.  Alternatively, Battle argued that the district

---

[1]On May 16, 2002, Wade filed a motion in the district court seeking a stay of his § 2254 proceedings "pending the results of the final judgment from the lower court of Supreme Court of Georgia . . . as such petition[] was recently made known to petitioner to be premature."  Wade may have filed this motion as a result of the May 13, 2002, letter from the Clerk of the Georgia Supreme Court informing Wade that his state habeas record was received and his CPC application was under consideration.

6

court should dismiss Wade's petition as untimely because Wade's CPC application was not timely filed and, thus, did not act to toll the limitations period.

On June 6, 2002, Wade responded with an opposition and another motion to stay the § 2254 proceedings. On September 5, 2002, Wade filed a motion to dismiss his own § 2254 petition without prejudice for lack of exhaustion, arguing that he "was not aware that [the] supreme court was willing to hear argument, and in doing so rushed into [the] next court."

On September 25, 2002, the magistrate judge issued a report and recommendation ("R&R") addressing Wade's § 2254 petition, Wade's motions to stay and to dismiss the § 2254 petition, and Battle's response and motion to dismiss the § 2254 petition. The magistrate judge determined that Wade's state convictions became final on February 22, 1999 (ninety days after his convictions and sentences were affirmed by the Georgia Supreme Court) and that therefore the AEDPA clock began to run on February 22, 1999.

The magistrate judge then found that Wade filed his state habeas petition on August 25, 1999, the date he signed it, and thus Wade's AEDPA clock had run for 184 days (from February 22, 1999 to August 25, 1999).[2] The magistrate judge

---

[2]By using the August 25, 1999 date, the magistrate judge evidently determined that the prison mailbox rule applies to initial pro se state habeas petitions in Georgia. While the Georgia Supreme Court has applied the mailbox rule to pro se CPC applications, see Massaline v.

7

noted that the state habeas court denied Wade's petition on October 19, 2000, and that Wade then had thirty days (or until November 20, 2000) to seek discretionary review with the Georgia Supreme Court, pursuant to O.C.G.A. § 9-14-52(b).[3] Because Wade did not do so, the magistrate judge determined that the AEDPA clock began running again on November 20, 2000, and that Wade then had 181 days to file a federal habeas corpus petition. However, Wade did not sign his § 2254 petition until February 25, 2002, which was approximately 281 days after AEDPA's one-year limitation period had expired.

Finally, the magistrate judge determined that equitable tolling was not appropriate because Wade did "not allege that he was prevented by events beyond his control from seeking review in the Georgia Supreme Court" within thirty days of the date the state court denied his state habeas petition. Accordingly, the

---

Williams, 274 Ga. 552, 554 S.E.2d 720 (2001), we are aware of no Georgia court applying the mailbox rule to initial pro se state habeas petitions. We need not, and do not, decide this issue, as the eight days between Wade's signing and filing his initial state habeas petition are not dispositive here.

[3]O.C.G.A. § 9-14-52(b) provides, in part:
If an unsuccessful petitioner desires to appeal, he must file a written application for a certificate of probable cause to appeal with the clerk of the Supreme Court within 30 days from the entry of the order denying him relief. The petitioner shall also file within the same period a notice of appeal with the clerk of the concerned superior court. The Supreme Court shall either grant or deny the application within a reasonable time after filing.

magistrate judge concluded that Wade's § 2254 petition was time-barred and that the district court need not consider the exhaustion issue.

On November 5, 2002, the district court adopted the magistrate's R&R, denied Wade's § 2254 petition and granted Battle's motion to dismiss the § 2254 petition for lack of exhaustion and as untimely.[4]

On November 18, 2002, Wade filed objections to the magistrate judge's R&R and asked the district court to reconsider the dismissal of his § 2254 petition. On January 24, 2003, the district court overruled Wade's objections and denied his request for reconsideration, stating that "the Report and Recommendation is correct in law and in fact."

Upon Wade's appeal, this Court granted a Certificate of Appealability ("COA") and instructed the parties to consider the relevance of Siebert v. Campbell, 334 F.3d 1018 (11th Cir. 2003). In a separate order, this Court appointed counsel to represent Wade in this appeal.

## II. DISCUSSION

---

[4]The district court also denied Wade's motions to stay the § 2254 proceedings and motions to dismiss his § 2254 petition.

AEDPA governs this case because Wade filed his § 2254 petition after AEDPA's effective date.[5]  Pursuant to AEDPA's limitations period, 28 U.S.C. § 2244(d)(1)(A), Wade had to file his § 2254 petition within one year of when his convictions became final on February 22, 1999, or no later than February 22, 2000.  Wade did not file his § 2254 petition for more than three years, or until February 25, 2002.  Thus, Wade's § 2254 petition is untimely unless there was sufficient tolling during this three-year period to make his § 2254 petition timely filed.

AEDPA's tolling provision, 28 U.S.C. § 2244(d)(2), provides: "The time during which a <u>properly filed</u> application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is <u>pending</u> shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2) (emphasis added).  Thus, the tolling in Wade's case depends on how long his application for state post-conviction relief was "properly filed" and "pending."  We first discuss what these terms mean and then apply them to Wade's case.

A.     **"Properly Filed" Under AEDPA**

_____

[5]"This Court reviews <u>de novo</u> the district court's determination that the petition for federal habeas corpus relief was time-barred under the AEDPA."  <u>Moore v. Crosby</u>, 321 F.3d 1377, 1379 (11th Cir. 2003).

The United States Supreme Court defined "properly filed" in § 2244(d)(2) in Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361 (2000). The Supreme Court in Artuz determined that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Id. at 8, 121 S. Ct. at 364. The Supreme Court explained that laws and rules governing filings "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Id. (emphasis added). The Supreme Court concluded that the question whether a petitioner has "properly filed" an application "is quite separate from the question of whether the claims contained in the application are meritorious and free of procedural bar." Id. at 9, 121 S. Ct. at 364. Therefore, under Artuz, we look to the state procedural rules governing filings to determine whether an application for state post-conviction relief is "properly filed."

Even prior to Artuz, this Court held that a petitioner's state post-conviction application must meet state filing deadlines in order to toll AEDPA's one-year limitation period. Webster v. Moore, 199 F.3d 1256, 1258 (11th Cir.) (involving Florida's two-year limitations period for Rule 3.850 petitions), cert. denied, 531 U.S. 991, 121 S. Ct. 481 (2000).[6] In Webster, the state habeas court dismissed

---

[6]The United States Supreme Court denied certiorari in Webster after it decided Artuz.

11

Webster's third Rule 3.850 petition as procedurally barred by Florida's two-year limitations period in Florida Rule of Criminal Procedure 3.850(b) (West Supp. 1999). Webster, 199 F.3d at 1257, 1258. The Webster Court concluded that "the state court's holding that Webster's Rule 3.850 petition was time-barred is due deference," and therefore, Webster's Rule 3.850 petition was not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2). Webster, 199 F.3d at 1259. Appended to our "due deference" sentence in Webster, however, was footnote four containing this caveat:

> There is no contention in this case that the state court's rule is not "firmly established and regularly followed." Thus, we have no occasion to consider whether the state court would be due deference if the rule applied was not "firmly established and regularly followed."

Id. at 1259 n.4 (internal citation omitted). Thus, Webster expressly did not answer the question of what happens when a petitioner claims the state procedural rule at issue is not firmly established and regularly followed.

This Court followed Webster's "due deference" standard in Stafford v. Thompson, 328 F.3d 1302, 1305 (11th Cir. 2003). In Stafford, as in this case, the petitioner sought to appeal the denial of his state habeas petition by filing a CPC application in the Georgia Supreme Court. Id. One question in Stafford was whether AEDPA's statute of limitations was tolled from the filing date of his CPC

12

application to the date when the Georgia Supreme Court dismissed the CPC as untimely. Id. In Stafford, this Court concluded that Webster controlled the "properly filed" inquiry, that this Court must give "due deference" to the Georgia Supreme Court's procedural determination that the CPC was untimely, and thus, that the CPC application was not "properly filed" under § 2244(d)(2) and did not toll AEDPA's limitation period. Id. In Stafford, this Court stated:

> Webster v. Moore, 199 F.3d 1256 (11th Cir. 2000) controls this issue. First, Webster held that this Court must give "due deference" to that procedural determination by the Georgia Supreme Court. Id. at 1259. Thus, we are bound by the state court's determination that the appeal was untimely. Second, Webster held that a petitioner's state court habeas corpus filing is not "properly filed" within the meaning of § 2244(d)(2) if the state court has determined that the petitioner's state court filing did not conform with the state's filing deadlines. Here, the Georgia Supreme Court determined that Stafford's CPC was untimely. Therefore, the petition was not "properly filed" and the statute of limitations thus did not toll under § 2244(d)(2) while the Georgia Supreme Court had it under consideration.

Id. As with the two-year rule for 3.850 petitions in Webster, there was no issue in Stafford regarding whether Georgia's rule for CPC applications was firmly established and regularly followed. Thus, Stafford properly concluded that Webster controlled.

After Stafford, this Court addressed the issue reserved in Webster regarding what happens in the "properly filed" inquiry when a petitioner claims that a state

13

procedural rule is not firmly established and regularly followed.  Siebert v. Campbell, 334 F.3d 1018, 1025 (11th Cir. 2003).  In Siebert, the petitioner did not timely file his state habeas petition and the state habeas court found that habeas "relief was precluded by [Alabama] Rule 32's statute of limitations."  Id. at 1021. The Alabama appellate court affirmed.  Id.

In Siebert, this Court stated that "[t]he aims of comity and federalism that animate both AEDPA and the doctrine of procedural default favor deference toward state procedural rules only when their consistent application demonstrates the state's real reliance on them as a means to the orderly administration of justice."  Id. at 1025.  The Siebert Court then stated:  "Accordingly, we conclude that a [state] rule governing filings must be 'firmly established and regularly followed' before noncompliance will render a petition improperly filed for the purpose of AEDPA's tolling provision."  Id.

The Siebert Court acknowledged that "[w]e have not previously stated that this standard likewise applies to state procedural rules in the 'properly filed' inquiry under § 2244(d)(2)."  Id.  However, the Siebert Court concluded that:

> [W]e have implied that it does.  See Webster, 199 F.3d at 1259 & n.4 (pausing to note, in concluding that state court ruling warranted deference in "properly filed" inquiry, that "[t]here is no contention in this case that the state court's rule is not 'firmly established and regularly followed'")(citation omitted).

14

Id. In Siebert, this Court also pointed out that "in Webster we presumed the limitation period established by Fla. R. Crim. P. 3.850 to be mandatory unless a prisoner met one of several narrow and specifically described exceptions enumerated by the rule." Siebert, 334 F.3d at 1023 n.7. In contrast, the Siebert Court noted that the state procedural rule at issue in Siebert – Alabama Rule 32.2(c) – was not mandatory but was a discretionary state limitations period under which state courts retained discretion to address claims in late petitions. Id. at 1027, 1029. The Siebert Court determined that the jurisdictional character of Alabama Rule 32.2(c) was not firmly established and regularly followed because at the time of Siebert's state habeas filing, Alabama courts retained discretion not to enforce the time bar. Id. at 1025-30. It emphasized that "we believe this case is best resolved narrowly, by attending to the precise nature of the Alabama time bar applied in Siebert's post-conviction proceedings." Id. at 1025. The Siebert Court then concluded that although Alabama's time bar "may now be of jurisdictional import" under Williams v. State, 783 So.2d 135 (Ala. Crim. App. 2000), "this was not the case at the time of Siebert's Rule 32 proceedings." Id. at 1027. Having discussed our precedent regarding the "properly filed" inquiry, we turn to what "pending" in § 2244(d)(2) means.

**B.** **"Pending" Under AEDPA**

The United States Supreme Court addressed the meaning of "pending" in

§ 2244(d)(2) in <u>Carey v. Saffold</u>, 536 U.S. 214, 122 S. Ct. 2134 (2002). In

<u>Saffold</u>, the Supreme Court determined that an application is "pending" as long as

the state collateral review process is "'in continuance – i.e., 'until the completion

of' that process," stating:

> [A]n application is pending as long as the ordinary state collateral
> review process is "in continuance" – i.e., "until the completion of"
> that process. In other words, until the application has achieved final
> resolution through the State's post-conviction procedures, by
> definition it remains "pending."

536 U.S. at 219-20, 122 S. Ct. at 2138. Therefore, a state post-conviction

application is "pending" under § 2244(d)(2) both when it actually is being

considered by the state habeas court and during the gap of time between the state

habeas court's initial disposition and the petitioner's <u>timely</u> filing of a petition for

review at the next level. <u>See id</u>. at 220, 226, 122 S. Ct. at 2138, 2141.

**C.** **Wade's § 2254 Petition**

Having discussed these AEDPA terms, we now turn to Wade's § 2254

petition. As noted earlier, Wade's convictions became final on February 22, 1999

and his AEDPA clock ran for 184 days until he filed his state habeas petition on

16

August 25, 1999. It is undisputed that Wade's state habeas petition was timely filed on August 25, 1999 under Georgia law and thus was "properly filed" under § 2244(d)(2) and remained "pending" until its denial on October 19, 2000. Under Saffold, Wade's state habeas petition also remained "pending" under § 2244(d)(2) until the thirty-day deadline in O.C.G.A. § 9-14-52(b) for filing a CPC application with the Georgia Supreme Court expired, on November 20, 2000. See 536 U.S. at 217, 122 S. Ct. at 2136-37.

Wade, however, did not file his CPC application within that thirty-day period required by O.C.G.A. § 9-14-52(b), but submitted it on January 7, 2001. Accordingly, the Georgia Supreme Court first returned his CPC application as untimely, and then dismissed his CPC application for failure to comply with O.C.G.A. § 9-14-52(b). Because we defer to that Georgia Supreme Court determination, Wade's CPC application was not "properly filed" under § 2244(d)(2). See Stafford, 328 F.3d at 1305; Webster, 199 F.3d at 1259. Accordingly, Wade's CPC application did not toll his AEDPA clock and it began to run again on November 20, 2000. Because as of November 20, 2000 Wade had only 181 days (i.e., until May 21, 2001) left on his AEDPA clock, and because he did not file his § 2254 petition until February 25, 2002, his § 2254 petition is time-barred.

17

To avoid this result, Wade cites our Siebert decision and argues that his January 7, 2001, CPC application was "properly filed" because the thirty-day requirement in O.C.G.A. § 9-14-52(b) is not a procedural rule that is "firmly established and regularly followed" by Georgia courts and thus noncompliance with O.C.G.A. § 9-14-52(b) is not fatal to tolling under AEDPA. We reject Wade's arguments for two reasons. First, as we note above, under Stafford, we give "due deference" to the Georgia Supreme Court's determination that Wade's CPC application failed to comply with O.C.G.A. § 9-14-52(b). There is a strong argument that Wade's issue about whether an untimely CPC application is "properly filed" under § 2244(d)(2) is foreclosed by our holding in Stafford. However, given that Stafford relied solely on Webster and Webster expressly reserved the precise issue Wade seeks to raise here, we also examine Georgia law to determine whether its thirty-day filing rule for CPC applications is "firmly established and regularly followed."

**D.    Thirty-day CPC Rule in O.C.G.A. § 9-14-52(b)**

Under Georgia law, appeals of the denial of state habeas petitions are governed by O.C.G.A. § 9-14-52. Under O.C.G.A. § 9-14-52(a), "no appeal shall be allowed unless the Supreme Court of this state issues a certificate of probable cause for the appeal." Under O.C.G.A. § 9-14-52(b), "[i]f an unsuccessful

18

petitioner desires to appeal, he must file a written application for a certificate of probable cause to appeal with the clerk of the Supreme Court within 30 days from the entry of the order denying him relief."

In Fullwood v. Sivley, the Georgia Supreme Court unequivocally held that compliance with O.C.G.A. § 9-14-52(b) is jurisdictional. 271 Ga. 248, 250, 517 S.E.2d 511, 513-14 (1999) ("Included among those jurisdictional and procedural statutes which cannot be ignored and must be applied is O.C.G.A. § 9-14-52(b). . . ."). In Fullwood, the petitioner filed an application for a certificate of probable cause almost thirty days after the thirty-day statutory deadline had expired. Id. at 249, 517 S.E.2d at 513. After refusing to waive enforcement of O.C.G.A. § 9-14-52(b), the Georgia Supreme Court dismissed Fullwood's appeal, stating: "[T]he constitutional doctrine of separation of powers and the principle of stare decisis, as previously recognized and consistently applied by this Court, compel the conclusion that, this 'appeal not being authorized, we have no choice but to dismiss it.'" Id. at 255, 517 S.E.2d at 517 (citation omitted).

After Fullwood, the Georgia Supreme Court adopted a pro se notice exception regarding pro se CPC applications. Hicks v. Scott, 273 Ga. 358, 541 S.E.2d 27 (2001); Capote v. Ray, 276 Ga. 1, 577 S.E.2d 755 (2002). In Hicks and Capote, the Georgia Supreme Court concluded that before a habeas appeal will be

19

dismissed for procedural irregularities, it must be established that the pro se prisoner was informed of the proper appellate procedure. Hicks, 273 Ga. at 359, 541 S.E.2d at 28; Capote, 276 Ga. at 2, 577 S.E.2d at 757. In both cases, the Georgia Supreme Court determined that it was undisputed that the pro se prisoner was not informed of the proper appellate procedure and that the appeal was not subject to dismissal under Fullwood. Hicks, 273 Ga. at 359, 541 S.E.2d at 28; Capote, 276 Ga. at 2, 577 S.E.2d at 757.

Further, after Fullwood the Georgia Supreme Court adopted a "mailbox rule" for determining when pro se prisoners' CPC applications shall be deemed filed with the Clerk of the Georgia Supreme Court. Massaline v. Williams, 274 Ga. 552, 555, 554 S.E.2d 720, 722-23 (2001). In Massaline, the Georgia Supreme Court reasoned that a mailbox rule is consistent with, and an interpretation of, the statutory language in O.C.G.A. § 9-14-52(b) that requires prisoners to file "with the clerk." Id. at 554, 554 S.E.2d at 722. The Georgia Supreme Court pointed out that other appellate statutes in Georgia have the same "file with the clerk" language and that the Georgia Supreme Court had adopted Rule 13, which

permitted non-incarcerated litigants to "file with the clerk" other than by personally delivering papers to the clerk.[7] Id.

Wade argues that these two judicially created exceptions for pro se litigants regarding their state habeas pleadings vest discretion in the Georgia Supreme Court such that O.C.G.A. § 9-14-52(b) is no longer a "firmly established and regularly followed" filing requirement. We disagree. These two exceptions for pro se prisoners basically establish firm and clear rules for applying the § 9-14-52(b)'s filing requirement in pro se cases. If anything, these firm and clear rules further remove discretion. Just because there are objectively defined exceptions – whether in a statute or judicially created – does not mean the procedural rule stated in O.C.G.A. § 9-14-52(b) becomes discretionary and not jurisdictional.[8]

Further, Wade submits no evidence that the Georgia Supreme Court applies these rules on a discretionary basis case-by-case, inexplicably exercising jurisdiction in some cases and not in others.[9] Wade has not cited, and we are

[7]Georgia Supreme Court Rule 13 permits litigants to send their papers by registered or certified mail to satisfy their obligation to file "with the clerk." Ga. Sup. Ct. R. 13.

[8]This Court in Siebert did not determine that judicially created exceptions caused Alabama Rule 32.2(c) to be discretionary. 334 F.3d at 1031. In Siebert, the Alabama courts had not clearly defined exceptions to Rule 32.2(c). Instead, the Alabama courts determined on an ad hoc basis when to exercise jurisdiction over a habeas petition and when not to exercise jurisdiction. Id.

[9]In this case, Wade also failed to file a timely notice of appeal in the state habeas court. In light of our decision regarding the untimeliness of his CPC application, we need not discuss

21

unable to locate, a single post-<u>Fullwood</u> case in which a <u>pro se</u> prisoner received

notice of the thirty-day requirement for a CPC but the Georgia Supreme Court

granted an untimely CPC application and reviewed a habeas petition on the merits.

There is nothing in the post-<u>Fullwood</u> Georgia caselaw or in O.C.G.A. § 9-14-

52(b) that would provide "prisoners with the hope" that filing an untimely CPC

application (after the required <u>pro se</u> notice) would garner judicial review.  <u>See</u>

<u>Siebert</u>, 334 F.3d at 1031.  This point is underscored by the fact that the Georgia

Supreme Court enforced this state procedural rule regarding Wade's own CPC

application.

Thus, contrary to Wade's arguments, O.C.G.A. § 9-14-52(b) creates a

"timely filing requirement" under <u>Artuz</u>.  Moreover, because Wade failed to

comply with the applicable laws and rules governing filings – namely O.C.G.A.

§ 9-14-52(b) – his CPC application was not "properly filed" for purposes of 28

U.S.C. § 2244(d)(2) and did not continue the tolling of his AEDPA clock.[10]

his untimely notice of appeal further.  We do note that in <u>Williams v. Zant</u>, 274 Ga. 704, 558 S.E.2d 3 (2001), and <u>Alderman v. Head</u>, 274 Ga. 761, 559 S.E.2d 72 (2002), the Georgia Supreme Court reviewed prisoners' habeas petitions on the merits even though they did not file a timely notice of appeal in the state trial court.  Both petitioners, however, <u>filed a timely CPC application</u>.  <u>Williams</u>, 274 Ga. at 705, 558 S.E.2d at 4-5 (Carley, J., dissenting); <u>Alderman</u>, 274 Ga. at 762, 559 S.E.2d at 72 (Carley, J., dissenting).

[10]We are also unconvinced by Wade's argument that because the Clerk of the Georgia Supreme Court later docketed Wade's CPC application that it must have been "properly filed." In <u>Artuz</u>, the Supreme Court stated that: "If, for example, an application is erroneously accepted by the clerk of a court lacking jurisdiction, or is erroneously accepted without the requisite filing

## E. Equitable Tolling

Despite the fact that Wade's CPC application does not satisfy the "properly filed" requirement of 28 U.S.C. § 2244(d)(2), Wade's federal habeas petition may still be timely if he is entitled to equitable tolling.[11] "Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition." Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001). Equitable tolling is an extraordinary remedy that is typically applied sparingly; however, "it is 'appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" Drew v. Dep't of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002) (quoting Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999)), cert. denied, 537 U.S. 1237, 123 S. Ct. 1364 (2003). "The

---

fee, it will be pending, but not properly filed." 531 U.S. at 9, 121 S. Ct. at 364. Moreover, the Georgia Supreme Court did not review Wade's CPC application and deny it on the merits. Instead, on October 29, 2002, the Georgia Supreme Court dismissed Wade's CPC application because he failed to comply with O.C.G.A. § 9-14-52(b).

[11]We review de novo a district court's decision on equitable tolling. Drew v. Dep't of Corr., 297 F.3d 1278, 1283 (11th Cir. 2002), cert. denied, 537 U.S. 1237, 123 S.Ct. 1364 (2003). "[T]he district court's determinations of the relevant facts will be reversed only if clearly erroneous." Id.

burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner." Id. at 1286.

Wade contends that his January 7, 2001 CPC application entitled him to equitable tolling of his AEDPA clock until October 29, 2002 when the Georgia Supreme Court notified him of the dismissal of his CPC application for failure to comply with O.C.G.A. § 9-14-52(b). Wade argues that he is entitled to equitable tolling because he was misled into believing that his CPC application had been accepted and was under consideration by the Georgia Supreme Court. To support his argument, Wade cites Knight v. Schofield, 292 F.3d 709 (11th Cir. 2002). However, as explained below, the facts in Knight are markedly different.

In Knight, after denial of his state habeas petition, the petitioner filed a CPC application with the Georgia Supreme Court. Id. at 710. There is no indication in Knight that the petitioner's CPC application was untimely as Wade's was. On September 9, 1996, the Georgia Supreme Court denied Knight's CPC application; whereas Wade's CPC application was dismissed for failure to comply with O.C.G.A. § 9-14-52(b).

The problem for the petitioner in Knight arose because the Clerk of the Georgia Supreme Court sent notice of the decision to the wrong person. Id. It was only after Knight contacted the Georgia Supreme Court that the Clerk, on March

24

4, 1998, informed Knight that his CPC application had been denied eighteen months earlier. Id. Thereafter, in August 1998, Knight filed a federal habeas petition. Knight stressed that he had inquired about the decision in January 1998 and that the Clerk of the Georgia Supreme Court had provided assurances that Knight would be notified "as soon as a decision was issued," but that the Clerk did not inform him until March 4, 1998 of the September 9, 1996 denial. Id.

In Knight, this Court determined that "the fact that the Supreme Court of Georgia failed to notify Knight of its decision was certainly beyond Knight's control" and that Knight "exercised diligence in inquiring about the decision." Id. at 711. This Court stated: "Until the clerk responded, Knight had no way of knowing that his state remedies had been exhausted. . . . Therefore, he had every reason to delay such filling until he knew that state relief had been denied." Id. Thus, Knight was entitled to equitable tolling. We cautioned, however, "not in every case will a prisoner be entitled to equitable tolling until he receives notice. Each case turns on its own facts." Id. (emphasis added).

In contrast to Knight, Wade did not timely file a CPC application, and on January 22, 2002, the Clerk of the Georgia Supreme Court sent Wade a letter advising him that it was returning his CPC application because it was untimely. Although, the Georgia Supreme Court later received the state habeas record,

25

entered a docket entry, and advised Wade that his CPC application was under consideration, this did not occur until May 3, 2002, several months after he had filed his federal habeas petition in February 2002. Thus, even assuming arguendo that the Georgia Supreme Court's subsequent actions "misled" Wade, it was not until several months after he had already filed his federal petition.

Thus, there are no "extraordinary circumstances" in this case that were beyond Wade's control or unavoidable. Further, to permit equitable tolling here while Wade's untimely CPC application was under consideration would eviscerate the "properly filed" requirement in 28 U.S.C. § 2244(d)(2). Accordingly, we conclude that the district court did not err in determining that Wade is not entitled to equitable tolling. Accordingly, Wade's AEDPA clock expired on May 21, 2001. Wade's § 2254 petition, filed on February 25, 2002, was too late.

## III. CONCLUSION

For the foregoing reasons, we conclude that Wade failed to file his § 2254 petition within AEDPA's one-year statute of limitations. Thus, the district court properly dismissed his § 2254 petition.

**AFFIRMED.**