**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 26, 2023**

# In the Court of Appeals of Georgia

A23A1078. SIMMONS v. THE STATE.

LAND, Judge.

After a jury trial, Reginald Simmons was convicted of multiple counts of armed robbery, false imprisonment, aggravated assault, possession of a firearm during the commission of a crime as well as one count each of burglary in the first degree and cruelty to children in the third degree arising out of a home invasion.[1] Simmons appeals from the denial of his motion for new trial. He argues that the trial court erred by denying his motion for a mistrial because the continuing witness rule was violated when the State's timeline and work product inadvertently went back with the jury during jury deliberations for approximately an hour and a half. For the following reasons, we affirm.

---

[1] Simmons was found not guilty of one count of terroristic threats.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 S.Ct. 2781, 61 LEd2d 560) (1979).

So viewed, the facts show that at about 3:00 p.m. on November 19, 2013, the victim was home with her brother, her boyfriend, her friend and the friend's seven month old baby when she heard the doorbell ring. When the victim answered the door, two men with guns forced themselves inside. The victim recognized the men as Simmons and as someone known as "Jaybo." Once inside, the intruders forced everyone at gunpoint to go upstairs to a bedroom. The two men then took turns ransacking the home and holding the five victims at gunpoint in the bedroom while threatening to shoot them. At one point, one of the men threatened to shoot the baby if the mother did not cooperate. After stealing various electronic and personal items

from the home and the victims, Simmons and Jaybo fled. The victims then called 911 and provided statements.

Later that evening, an investigating detective received an anonymous phone call, which came up as "Foster, K" on the caller ID. The caller identified herself as Simmons' mother, and she told the detective that Simmons had called her to say that he was the victim of a home invasion and needed help getting out of town. Simmons' mother then told the detective that she did not believe Simmons and felt like he was trying to get money out of her. Three days later, Simmons' mother called the police again and told them that her son had been involved in an armed robbery. She agreed to give a formal statement to the police, but never showed up. Simmons' mother was called as a witness at trial and was eventually declared hostile and impeached when she testified that she did not remember speaking with detectives. Based on the information provided by Simmons' mother, the detective created a six-person photographic lineup. The victim identified Simmons as one of the individuals who committed the robbery from this photographic lineup.

After the close of evidence and closing arguments, the trial court charged the jury and then sent them to lunch. The jury began deliberating at 2:15 p.m. About two hours later, the trial court was informed by the courtroom deputy that the jury

submitted a question asking if a written timeline was supposed to have been sent back with them to the jury room during deliberations. Defense counsel and the State consulted with the trial court outside the presence of the jury. They informed the trial court that the timeline was the State's work product and had inadvertently been made part of the evidence that went back with the jury. The jury foreperson was called into the room and testified that the members of the jury had read and considered the timeline when in the deliberation room. After reviewing the timeline, defense counsel then informed the trial court that the only information contained in it that was not cumulative of evidence properly admitted at trial was: (1) a notation that on November 19 at 2:22 p.m., "Mimi English flags down Officer Shelton at Sunset Lodge" and (2) a notation that on November 26, 2013 at 5:00 p.m., "[Detective] Cantrell attempted to contact Foster . . . to reschedule her interview, leaves message." The trial court noted that the State had, in fact, introduced evidence that the detective called Foster to reschedule and that the statement that Mimi English flagged down an officer was not harmful to the defense. The State sought a limiting instruction directing the jurors not to consider the timeline as part of their deliberations. Simmons moved for a mistrial, alleging a violation of the continuing witness rule. The trial court denied the motion for a mistrial. The trial court then issued a limiting

4

instruction to the jury which instructed them that the timeline was not evidence, it was the State's work product, and it was not to be considered during their deliberations. Simmons then renewed his motion for mistrial, which the trial court denied.

The denial of a motion for mistrial lies within the sound discretion of the trial court, which will not be disturbed on appeal absent manifest abuse of discretion. *Davis v. State*, 285 Ga. 343, 345 (4) (676 SE2d 214) (2009). See also *Gaines v. State*, 339 Ga. App. 527, 529 (2) (792 SE2d 466) (2016) (the denial of a mistrial is reversible error only if it appears that a "mistrial was essential to preserve the defendant's right to a fair trial") (footnote omitted)).

The continuing witness rule prohibits testimonial writings, such as written interrogatories and signed statements of guilt, "from going out with the jury when the evidentiary value of such writings depends upon the credibility of the maker" and contain "their makers' assertions of purported truths[.]" (Footnotes omitted.) *Bryant v. State*, 270 Ga. 266, 270-271 (3) (507 SE2d 451) (1998). Here, the State's timeline was not admitted at trial as documentary or demonstrative evidence and was not created by a witness and thus was not subject to the continuing witness rule. See e. g. *Moore v. State*, 311 Ga. 506, 511-512 (4) (858 SE2d 676) (2021) (a State-created powerpoint presentation that summarized the admitted cell phone evidence was not

5

subject to the continuing witness rule); *McKenzie v. State*, 300 Ga. App. 469, 473 (3) (685 SE2d 333) (2009) (continuing witness rule did not apply to a timeline of the defendants' cell phone activity created by an investigator for the district attorney's office). See also *Dockery v. State*, 308 Ga. App. 502, 506-507 (4) (707 SE2d 889) (2011) (finding a continuing witness violation harmless where the erroneously admitted evidence was cumulative of evidence that had already been properly admitted).

Even if we construe Simmons' motion as arguing that the jury was improperly given extra-judicial information during their deliberations, we find that the trial court did not err by denying the motion. When a juror is exposed to information from outside the trial which is brought into the jury room, such information is "extra-judicial information" that can "violate a defendant's [Constitutional] right to confront and cross-examine witnesses against him." (Citation and punctuation omitted.) *Ballinger v. Watkins*, 315 Ga. 369, 376 (2) (a) (882 SE2d 312) (2022). A claim that a defendant was so harmed by his exposure to extra-judicial information "ultimately turns on whether the defendant was prejudiced" by such exposure. Id. at 377 (2) (b). Here, the only evidence in the State's timeline that had not been introduced through other means at trial was that a woman named Mimi English flagged down an officer

6

just after the armed robbery occurred. In light of the trial court's curative instructions and the fact any extra-judicial information on the timeline that was not merely cumulative of other evidence was of a non-prejudicial nature, especially in light of the other evidence properly admitted at trial, we find no abuse of discretion in the trial court's denial of Simmons' motion for mistrial. See *Burney v. State*, 309 Ga. 273, 293-294 (5) (845 SE2d 625) (2020) (new trial was not warranted when juror obtained extra-judicial information when she researched the definitions of "malice" and "malice murder" online because the trial court recharged the jury as to the meaning of "malice murder" upon their request and the trial court found no evidence that any of the jurors relied upon the information obtained in the juror's online search); *Royal v. State*, 217 Ga. App. 459, 460 (3) (458 SE2d 366) (1995) (affirming denial of motion for mistrial when a juror showed other jurors her own personal map showing the location of the road where the victim lived when trial court instructed the jurors to disregard information they received from observing the map). See also *Jones v. State*, 305 Ga. 750, 755 (3) (827 SE2d 879) (2019) (holding that juries are presumed to follow curative instructions in the absence of proof to the contrary).

*Judgment affirmed. Barnes, P. J., and Watkins, J., concur.*