S99H0240. FULLWOOD v. SIVLEY.
(517 SE2d 511)

CARLEY, Justice.

On February 22, 1988, Fullwood entered a guilty plea in the

Superior Court of Crisp County to a charge of possessing cocaine with intent to distribute. The trial court accepted the plea and imposed a ten-year first offender probated sentence. In February of 1998, Fullwood attempted to file a pro se habeas corpus petition in Crisp County, challenging his 1988 conviction. On February 17, 1998, the habeas court, citing OCGA § 9-15-2, denied filing of the petition on the ground that venue was not proper in Crisp County. As with any other order of a lower court, the merits of the habeas court's order denying filing of a' petition cannot be reached by an appellate court unless and until it is established that the court has jurisdiction to do so. In this regard, the habeas court informed Fullwood, within the text of the order, that his right to appeal was governed by OCGA § 9-14-52. OCGA § 9-14-52 (a) provides that "as to final orders of the court which are adverse to the petitioner no appeal shall be allowed unless the Supreme Court of this state issues a certificate of probable cause. . . ." Under this unambiguous language, OCGA § 9-14-52 is applicable with respect to a final adverse order entered in a habeas proceeding, and does not require the entry of a final order addressing the merits of the petitioner's claim. Clearly, an order denying filing of a habeas petition pursuant to OCGA § 9-15-2 is a final order which is adverse to the petitioner, because it has the effect of denying any of the relief sought. See OCGA § 9-14-52 (a). Accordingly, the habeas court correctly informed Fullwood of the proper procedure for obtaining appellate review of its order. Cf. *Giles v. Ford*, 258 Ga. 245 (368 SE2d 318) (1988) (classified as a "habeas" case).

Although Fullwood was informed as to the proper appellate procedure, he failed to comply with OCGA § 9-14-52 (b), because, within 30 days of the habeas court's order, he did not file a written application seeking this Court's issuance of a certificate of probable cause to appeal therefrom. Instead, within that time period, he filed only a notice of direct appeal to the Court of Appeals. On April 10, 1998, the Court of Appeals correctly transferred the case to this Court, on the ground it is within our exclusive jurisdiction over habeas corpus cases. Because of Fullwood's failure to comply with OCGA § 9-14-52 (b), however, the record did not contain a timely filed application for a certificate of probable cause. It was only on April 15, 1998, almost 30 days late, that Fullwood finally applied to this Court for a certificate of probable cause to appeal the habeas court's order.

This Court is not at liberty "to ignore jurisdictional and procedural statutes and rules, and to change its role from disinterested decision-maker to appellate advocate reviewing a trial record for error." *Rowland v. State*, 264 Ga. 872, 874 (1) (452 SE2d 756) (1995). Indeed, " '(I)t is the duty of this [C]ourt to raise the question of its jurisdiction in all cases in which there may be any doubt as to the existence of such jurisdiction. (Cits.)' [Cit.]" *Rowland v. State*, supra at 872 (1).

This holding is firmly based upon the principle that there is no federal or state constitutional right to bring an appeal. "Instead, the right of appeal depends upon statute." *State v. Smith*, 268 Ga. 75 (485 SE2d 491) (1997). Included among those jurisdictional and procedural statutes which cannot be ignored and must be applied is OCGA § 9-14-52 (b), providing, in relevant part, that if an unsuccessful petitioner for a writ of habeas corpus "desires to appeal, he *must* file a written application for a certificate of probable cause to appeal with the clerk of the Supreme Court within 30 days from the entry of the order denying him relief." (Emphasis supplied.) There is no dispute that Stacy Fullwood, the unsuccessful petitioner for habeas in this case, failed to comply with this statutory mandate.

In *Patterson v. Earp*, 257 Ga. 729, 730 (363 SE2d 248) (1988), this Court held that "OCGA § 9-14-52 (b) *requires* an application for certificate of probable cause to appeal habeas corpus denials." (Emphasis supplied.) We further concluded that compliance with that requirement is jurisdictional. "Since no application for a certificate of probable cause to appeal was made in this case, *this appeal must therefore be dismissed*." (Emphasis supplied.) *Patterson v. Earp*, supra at 730. Thus, the requirement that the unsuccessful petitioner timely apply for a certificate of probable cause is more than a procedural nicety related to securing appellate review of adverse judgments. Cases are not dismissed for failure to comply with procedural niceties, but only for failing to comply with jurisdictional prerequisites. Although an application for a certificate of probable cause was filed in this case, it was late. There is no legal distinction between the failure to file any application and the failure to file a timely application. In either event, there is a lack of compliance with the jurisdictional requirement of OCGA § 9-14-52 (b). An appellant's strict adherence to statutorily mandated time limits has always been considered an absolute requirement to confer jurisdiction upon an appellate court. *Rowland v. State*, supra at 872 (1) (30-day time limit of OCGA § 5-6-38 (a)). In habeas corpus cases, the General Assembly has determined that the unsuccessful petitioner must timely file *both* a notice of appeal *and* an application for a certificate of probable cause in order to invoke this Court's jurisdiction. This Court cannot denigrate the General Assembly's determination by considering *either* a timely notice of appeal *or* a timely application as a mere procedural nicety. By filing his notice of appeal timely, Fullwood may have substantially complied with one of the elements for obtaining appellate review, but he failed utterly to satisfy the equally mandatory requirement that he also file a timely application for a certificate of probable cause. *Patterson v. Earp*, supra. *Patterson* was not decided in the precise context of a procedurally defective appeal by a pro se petitioner for state habeas corpus. However, *Patterson*

does deal with the statutory requirement of applying for a certificate of probable cause, and we are cited to no authority for the anomalous proposition that OCGA § 9-14-52 (b) is properly construed as jurisdictional if the unsuccessful habeas corpus applicant is represented by counsel and as a mere procedural nicety if the applicant is acting pro se. The decision in *Patterson* clearly stands for the proposition that OCGA § 9-14-52 (b) imposes upon *all* unsuccessful habeas corpus applicants the jurisdictional requirement of filing a timely application for a certificate of probable cause. Moreover, in *Smith v. Nichols*, 270 Ga. 550, 552 (1) (512 SE2d 279) (1999), we unanimously held that OCGA § 9-14-52 "does not authorize a prisoner to appeal directly [from] the denial of a petition for habeas corpus relief." If Fullwood can obtain a decision on the merits simply by filing a timely notice of appeal, then he is being afforded the right to bring a direct appeal which *Smith* clearly held to be unauthorized. *Smith* cannot be ignored and that case is controlling authority for the proposition that an application for a certificate of probable cause and a notice of appeal are both necessary to invoke this Court's jurisdiction over an appeal from the denial of a petition for habeas corpus. The only jurisdictional question for resolution is, therefore, whether this Court has the authority to waive enforcement of OCGA § 9-14-52 (b) in that regard.

Habeas corpus is the "great writ," but a petition seeking its issuance does not constitute a continuation of the petitioner's original appeal of his criminal conviction nor does it initiate a second appeal therefrom. *In the Matter of Stoner*, 252 Ga. 397, 398 (314 SE2d 214) (1984). Habeas corpus is a civil, not a criminal, remedy. *Green v. Caldwell*, 229 Ga. 650, 651 (1) (193 SE2d 847) (1972). Moreover, the fact that habeas corpus has been called an "equitable" remedy does not authorize a court to ignore the body of statutes, rules, and precedents governing its issuance. *Lonchar v. Thomas*, 517 U. S. 314, 319 (II) (116 SC 1293, 134 LE2d 440) (1996). Equity cannot supersede the positive enactments of the General Assembly. *Lewis v. Bd. of Ed. of Lowndes County*, 183 Ga. 687, 690 (1) (189 SE 233) (1936). Among the statutes governing the issuance of a writ of habeas corpus in this state is OCGA § 9-14-52 (b), the unambiguous legislative intent of which is "to *require* a judicial certification of probable cause as a *prerequisite* to appeal in a habeas case decided adversely to a petitioner and to establish the procedure for obtaining such certification and for pursuing such appeal." (Emphasis supplied.) *Reed v. Hopper*, 235 Ga. 298, 299 (4) (219 SE2d 409) (1975). Such statutes have always been considered as establishing jurisdictional conditions which must be met by the party seeking to appeal, and which the appellate court must enforce. *Patterson v. Earp*, supra. "[T]he right of appeal is not absolute, but is one based upon the conditions imposed by the Gen-

eral Assembly for bringing cases to the appellate courts." *Fife v. Johnston*, 225 Ga. 447 (169 SE2d 167) (1969). "The provisions of the law respecting the procedure to be followed in perfecting appeals to this court are jurisdictional, and unless this court has jurisdiction of a case, it is without power or authority to render a judgment upon review." *Spivey v. Nalley*, 212 Ga. 810 (96 SE2d 260) (1957).

Compliance with the jurisdictional time limits are strictly enforced even in criminal cases. *Rowland v. State*, supra. Since compliance with jurisdictional time limits is as imperative in habeas cases as in the context of an appeal from the underlying criminal conviction itself, we have declined to accord habeas cases special treatment with respect to time requirements in appellate procedural statutes. *Patterson v. Earp*, supra. Indeed, this Court has held that, if the notice of appeal required by OCGA § 9-14-52 (b) is untimely, then the merits of the appeal cannot be reached. *Donnelly v. Stynchcombe*, 246 Ga. 118 (269 SE2d 10) (1980). See also *Curry v. Hopper*, 234 Ga. 642 (217 SE2d 155) (1975). In other jurisdictions as well, the necessary steps to obtain a review of habeas corpus proceedings must ordinarily "be taken within the prescribed time." 39A CJS, Habeas Corpus, § 244 (b), p. 276.

The Constitutions of Georgia and the United States guarantee that the privilege of applying for the writ of habeas corpus shall not be suspended except in the specified extraordinary circumstances. However, this guarantee obviously has no applicability here, since the constitutional enforcement of applicable appellate procedures against an unsuccessful petitioner does not constitute a "suspension" of the writ. It is for that reason that, in the federal system, the Supreme Court of the United States has specifically held that compliance with the statutes and rules providing applicable time limits for seeking appellate review of a final habeas order is "mandatory and jurisdictional," in the absence of which no appeal can be considered on the merits. *Browder v. Director, Dept. of Corrections of Ill.*, 434 U. S. 257, 271-272 (II) (B) (98 SC 556, 54 LE2d 521) (1978). See also *Coleman v. Thompson*, 501 U. S. 722, 751 (IV) (111 SC 2546, 115 LE2d 640) (1991). Certainly, nothing in either the Georgia Constitution or the Constitution of the United States guarantees the right of a petitioner to *appeal* from an adverse order in a habeas corpus proceeding, notwithstanding his failure to comply the jurisdictional requirements for invoking appellate jurisdiction. The right to appeal has a statutory, not a constitutional, origin. *State v. Smith*, supra. Under the Sixth Amendment to the United States Constitution and Article I, Section I, Paragraph XI of the Georgia Constitution, a criminal defendant has the right to a trial by jury. However, enforcement of OCGA § 9-14-52 no more constitutes a suspension of the writ of habeas corpus than the enforcement of comparable jurisdictional

statutes against a criminal appellant constitutes a violation of his constitutional right to trial by jury. See *Rowland v. State*, supra. Likewise, the fact that Fullwood represents himself is immaterial. Habeas corpus is a civil remedy, and the constitutional right to counsel extends only through the direct appeal of a criminal conviction. *Gibson v. Turpin*, 270 Ga. 855 (1) (513 SE2d 186) (1999); *Paino v. State*, 263 Ga. 331 (435 SE2d 24) (1993). Thus, Fullwood's status is no different from any other appellant who is entitled to retain legal representation, but who has no constitutional right to counsel. We do not ignore jurisdictional statutes in cases wherein the appellant has chosen, for whatever reason, to proceed pro se. Because nothing in OCGA § 9-14-52 excuses compliance by a pro se petitioner with all of the requirements for invoking this Court's jurisdiction over an appeal from an adverse order, this Court is not free to rely upon the fact that Fullwood acts as his own legal representative as the basis for holding that those requirements are merely directory rather than jurisdictional.

The distinction between the "legislative and judicial function is that the former sets up rights or inhibitions, usually general in character; while the latter interprets, applies, and enforces existing law as related to subsequent acts of persons amenable thereto." *South View Cemetery Assn. v. Hailey*, 199 Ga. 478, 480 (3) (34 SE2d 863) (1945). " '[T]he universal rule of our system — indeed of the English system of government, and of other systems which approximate to free government — . . . is [that] the courts declare what the *law is*, the legislature declares what the law *shall be*.' " (Emphasis in original.) *McCutcheon v. Smith*, 199 Ga. 685, 691 (2) (35 SE2d 144) (1945). Thus, under the separation of powers doctrine, every court has the constitutional obligation to interpret, apply and enforce the existing laws, including those which govern the exercise of its jurisdiction. Moreover, under Article VI, Section VI, Paragraph VI of the Georgia Constitution, this Court exercises paramount authority over the judicial branch of government and, thus, it has an especially important responsibility to set the proper example for this state's judiciary by complying with all applicable statutes which establish the procedures for invoking its jurisdiction. The "Privilege of the Writ of Habeas Corpus" may not be suspended, but the unsuccessful habeas petitioner should have no greater constitutional right to have his appeal decided on the merits than the appellant in any other case which is appealable to this Court. Certainly, there is no reason to conclude that the General Assembly has less respect for habeas corpus than do the members of this Court. The General Assembly, as well as this Court, has a role to play in this state's government, including the enactment of statutes providing for the privilege of its citizens to seek habeas corpus relief. In its legislative capacity, the

General Assembly is authorized to enact laws placing conditions on the right to appeal the denial of issuance of a writ of habeas corpus and such laws must be enforced uniformly by the judiciary.

Under subsection (a) of OCGA § 9-14-52, "no appeal shall be allowed" by an unsuccessful habeas applicant unless this Court has issued a certificate of probable cause, and subsection (b) of that statute clearly states that the unsuccessful habeas petitioner "must file a written" application for that certificate within the specified 30-day period. Even after being informed of his right to appeal the denial of habeas relief, Fullwood did not perfect an appeal in a timely manner. See *Henderson v. State*, 265 Ga. 317, 318 (2) (454 SE2d 458) (1995) (30-day time limit of OCGA § 5-6-38 (a)). Although a timely application incorrectly filed in the Court of Appeals would have been properly transferred to this Court, Fullwood failed to file the requisite application for a certificate of probable cause in either appellate court within the time provided by law. The subsequent untimely filing of Fullwood's application in this Court did not satisfy the statutory requirements based on the concept of substantial compliance, because an appellate court, having no jurisdiction from the outset, cannot perfect an appellant's belated attempt to invest it with jurisdiction. *Interstate Fire Ins. Co. v. Chattam*, 222 Ga. 436 (150 SE2d 618) (1966). This Court has always refused to sanction a practice which requires that it ignore jurisdictional statutes and abandon its role as disinterested decision-maker. *Rowland v. State*, supra at 874 (1). Certainly, we must take into account the history of the writ of habeas corpus, the realities of habeas corpus litigation, and the possible constitutional implications of strict enforcement of OCGA § 9-14-52 (b). In doing so, however, we likewise are compelled to give proper consideration to the controlling principles of separation of powers and stare decisis. This Court has a constitutional obligation to enforce OCGA § 9-14-52 (b) according to its terms, and for it to do so is not " 'artificially to elevate procedural rulings over substantive adjudications in post-conviction review. . . .' " Wilkes, State Postconviction Remedies and Relief, p. 112 (1996). There is nothing artificial in judicial deference to the constitutional authority of the General Assembly to enact legislation. The constitutional principle of separation of powers is intended to protect the citizens of this state from the tyranny of the judiciary, insuring that the authority to enact the laws will be exercised only by those representatives duly elected to serve as legislators. The General Assembly "being the sovereign power in the State, while acting within the pale of its constitutional competency, it is the province of the Courts to interpret its mandates, and their duty to obey them, however absurd and unreasonable they may appear." *Flint River Steamboat Co. v. Foster*, 5 Ga. 194 (2) (1848). Moreover, under any other interpretation of OCGA § 9-14-52 (b),

Fullwood would be entitled to a decision on the merits, even though only a few weeks ago we unanimously reached the contrary conclusion in *Smith v. Nichols*, supra. Accordingly, the constitutional doctrine of separation of powers and the principle of stare decisis, as previously recognized and consistently applied by this Court, compel the conclusion that, this "appeal not being authorized, we have no choice but to dismiss it." *Fife v. Johnston*, supra at 447.

*Appeal dismissed. All the Justices concur, except Benham, C. J., Fletcher, P. J., and Sears, J., who dissent.*

BENHAM, Chief Justice, dissenting.

Just recently, we decided that a person sentenced to death is not entitled to an appointed lawyer in pursuit of habeas corpus relief. *Gibson v. Turpin*, 270 Ga. 855 (513 SE2d 186) (1999). Prior to that, strict time tables were imposed on habeas corpus petitioners. See OCGA §§ 9-14-47.1; 9-14-48 (b); 9-14-52 (b). Even earlier, this Court decided that there was no equal protection violation in the fact that the State was entitled to a direct appeal in habeas corpus matters while an unsuccessful petitioner was required to file an application. *Reed v. Hopper*, 235 Ga. 298 (219 SE2d 409) (1975). Now the majority constructs another hurdle for habeas corpus petitioners to overcome. The net effect will mean a complete emasculation of the Great Writ.

We are presented in this case specifically with the question of whether pro se petitioners for the writ of habeas corpus will be required to comply strictly with the appellate procedures set forth in OCGA § 9-14-52, which provides that an unsuccessful petitioner seeking to appeal must, within 30 days of the judgment, file both a notice of appeal and an application to this Court for a certificate of probable cause to appeal. In a broader sense, though, we are deciding whether the writ of habeas corpus is to continue to reside in a place of honor in Georgia law. In considering this issue, we must be cognizant of Georgia's place in the history of habeas corpus as the first jurisdiction to include a specific right to the Great Writ in its constitution. Wilkes, *A New Role for an Ancient Writ: Postconviction Habeas Corpus Relief in Georgia (Part I)*, 8 Ga. L. Rev. 313, 314. We must also be mindful of the shrinking role of the federal judiciary in the protection of individual rights, and the concomitant need for the state judiciaries to pick up that burden.

It would be a bitter irony indeed if our [state] courts, in an effort to accommodate the Supreme Court's retrenchment of federal habeas review, were artificially to elevate procedural rulings over substantive adjudications in post-conviction review, at a time when the Court's curtailment of [federal] habeas review forces state prisoners to rely increasingly on

state post-conviction proceedings as their last resort for vindicating their state and federal constitutional rights.

*State v. Preciose*, 129 NJ 451, 477 (609 A2d 1280) (1993), quoted in Wilkes, *State Postconviction Remedies and Relief*, p. 112. (Harrison, 1996).

Upon a consideration of the history of the writ of habeas corpus, of the realities of habeas corpus litigation by prisoners, and of the possible constitutional implications of a requirement of strict compliance, I conclude that in the context of pro se petitioners for the writ of habeas corpus, the requirements of OCGA § 9-14-52 should not be considered jurisdictional in nature and that strict compliance with the statutory procedures should not be required so long as sufficient steps are taken by the petitioner to give notice of an intention to begin the appellate process.

The majority opinion in this case posits that the requirements of OCGA § 9-14-52 are jurisdictional and that strict compliance with them is an absolute requirement in order to permit this Court to entertain an appeal from a judgment adverse to the petitioner in a habeas corpus case. In support of that position, the majority opinion cites several cases, conspicuously absent from which are any which address the specific situation before us, a procedurally defective appeal by a pro se petitioner for state habeas corpus.

It has long been the practice of this Court, a practice grounded in our duty to do substantial justice to all who come before our bar and in the realities of habeas corpus practice, to accord pro se habeas corpus petitioners considerable latitude with regard to the procedural niceties related to securing appellate review of adverse judgments. That practice is also grounded in respect for the spirit as well as the letter of our Constitution: "The writ of habeas corpus shall not be suspended unless, in case of rebellion or invasion, the public safety may require it." Art. I, Sec. I, Par. XV, Ga. Const. 1983. See also U. S. Const., Art. I, Sec. 9.

While OCGA § 9-14-52 does not on its face amount to a suspension of the Great Writ, the majority's rigid interpretation of that section, for all practical purposes, amounts to such a suspension, at least as regards unrepresented habeas corpus petitioners.[1] "An act must be construed to support its constitutionality if there is one construction which would support constitutionality and one which would

---

[1] Fullwood's situation, a pro se petitioner who failed to comply strictly with the statutory requirements, evokes Presiding Justice Fletcher's observation in his special concurrence in *Davis v. Thomas*, 266 Ga. 835, 836 (471 SE2d 202) (1996), that "without competent counsel, an indigent inmate will find the newly enacted time restraints on state habeas actions impossible to meet."

not." *Lasseter v. Ga. Public Svc. Comm.*, 253 Ga. 227, 230 (319 SE2d 824) (1984). "The cardinal rule of statutory construction is to ascertain the legislative intent and purpose in enacting the law and to construe the statute to effectuate that intent. [Cit.]" *Ferguson v. Ferguson*, 267 Ga. 886 (1) (485 SE2d 475) (1997). The obvious purpose of the requirement in OCGA § 9-14-52 (b) that an unsuccessful petitioner file both a notice of appeal and an application for a certificate of probable cause to appeal is to provide this Court with the data necessary to consider whether a full appeal should be permitted. Given the fact that 90 percent of appeals from the denial of habeas corpus petitions are filed pro se[2] by persons with limited access to document production facilities, that is a perfectly sensible departure from the procedure required in applications to appeal under OCGA §§ 5-6-34 and 5-6-35, where the applicant is required to identify and provide to the appellate court the portions of the record needed to decide whether an appeal is warranted. The purpose of the procedure set out in OCGA § 9-14-52 (b) has been well met by this Court's practice of permitting substantial compliance with the statute, and no petition has wanted for proper consideration on account of the lack of a record. Now the majority opinion has taken a statutory provision intended to further our consideration of the merits of habeas corpus appeals and corrupted it into a trap for the unwary, a means of preventing consideration of the merits. It was to avoid such injustice that this Court began to consider the statutory procedures to be directory rather than jurisdictional.

To require strict compliance with the procedures set out in OCGA § 9-14-52, as the majority opinion does, would in an unconscionable proportion of cases amount to a blanket denial of the Great Writ, in fact, to a suspension of the writ. Such a grudging attitude toward the Great Writ of Liberty is entirely inconsistent with Georgia's historical reverence for the writ, evidenced by the fact that Georgia was one of only three states to vote against the portion of the habeas corpus clause in the first U. S. Constitution which would permit the suspension of the writ under specified circumstances. Wilkes, *State Postconviction Remedies and Relief*, p. 112 (Harrison, 1996). The majority opinion's insistence on scrupulous observance of every procedural step acts only to bar meaningful access to the courts, undermining this Court's principled pronouncement in *Howard v. Sharpe*, 266 Ga. 771 (1) (470 SE2d 678) (1996):

Prisoner access to the courts in order to challenge unlawful convictions and to seek redress for violations of constitu-

---

[2] 1,327 of 1,462 petitioners seeking review in this Court in 1994-1998.

tional rights cannot be unjustifiably denied or obstructed. [Cit.] In this State, meaningful access to the courts includes the right to contest the legality of a conviction or the constitutionality of prison conditions through habeas corpus proceedings, [cit.], and the right to meaningful communications with the courts. [Cits.] Those regulations and restrictions which bar adequate, effective and meaningful access to the courts are unconstitutional. [Cits.] . . . Because of the constitutional ramifications to any abridgement of an individual's right to access [cit.], and given the expanded view of the right to file for habeas corpus relief set forth in OCGA § 9-14-40 and *Giles v. Ford*, [258 Ga. 245 (1) (368 SE2d 318) (1988)] . . . , restrictions on an inmate's right of access to the courts must be drawn so as to avoid unjustifiably obstructing access to the courts and clearly warranted by the particular circumstances of each case.[3]

The majority opinion's construction of OCGA § 9-14-52 (b) causes it to fall afoul of the constitutional proscription against unreasonably limiting access to the courts as well as the prohibition against suspension of the writ of habeas corpus. By contrast, this Court's policy of accepting substantial compliance with the procedures of that statute rescued it from unconstitutionality.

I would hold that the correct and constitutional construction of OCGA § 9-14-52 is that substantial compliance with the procedures in that statute is sufficient to initiate an appeal from an adverse judgment against a habeas corpus petitioner. Thus construed, the statute does substantial justice and does not run afoul of the constitutional prohibition against the suspension of the writ of habeas corpus. Furthermore, such an interpretation would be in keeping with the General Assembly's mandate in OCGA § 1-3-1 (c): "A substantial compliance with any statutory requirement . . . shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by law." This Court has seen fit to accept substantial compliance with statutory requirements in other situations (*Smith v. State*, 270 Ga. 68 (508 SE2d 145) (1998); *Faulk v. Twiggs County*, 269 Ga. 809 (504 SE2d 668) (1998); *Fitzpatrick v. State*, 268 Ga. 423 (489 SE2d 840) (1997); *McClain v. State*, 267 Ga. 378 (477 SE2d 814) (1996); *Dept. of Transp. v. Moseman Constr. Co.*, 260 Ga. 369 (393 SE2d 258) (1990)) and the majority presents no convincing explanation why such a rationale does not apply in this case.

---

[3] Although I dissented in *Howard*, my disagreement was with the result, not with the quoted caution against obstruction of the efforts of prisoners to seek justice.

In suggesting that this Court would flout the legislative authority of the General Assembly by considering statutory procedures directory rather than jurisdictional, the majority opinion makes much of the principle of separation of powers. However, the majority opinion ignores in its rhetoric one of the chief roles the judiciary plays in the application of that principle, protecting from the tyranny of the majority the rights of those brought before the bar of justice. There is between the legislative and judicial branches of government a healthy tension as the former seeks to give voice to the will of the majority and the latter seeks to ensure that those expressions of the majority's will do not weaken the fundamental guarantees of liberty found in our constitution. That is the constitutional mandate which this Court should execute in this case.

In addition to placing even more hurdles in the way of those whose route to justice is already strewn with obstacles, the majority opinion has the undesirable and unjust result of procedurally barring a litigant whose right to relief, should he be permitted to seek it, is plain. Fullwood, in federal custody in Alabama, filed a habeas corpus petition in Crisp County challenging his 1988 conviction there, but the habeas corpus court issued an order denying filing under OCGA § 9-15-2, holding that habeas corpus petitions must be filed in the county where the petitioner is being detained. The law is clear that when a petitioner who is restrained by federal authorities in another state seeks to attack a Georgia conviction, the proper forum for filing a habeas corpus petition is the superior court in the county in which the petitioner was sentenced. *Craig v. State*, 234 Ga. 398 (216 SE2d 296) (1975). Furthermore, OCGA § 9-15-2 does not apply to habeas corpus proceedings. *Giles v. Ford*, 258 Ga. 245 (1) (368 SE2d 318) (1988). Thus, the habeas court improperly denied filing. Accordingly, Fullwood's application for a certificate of probable cause to appeal should be granted and this case should be remanded with instructions to permit the action to proceed. Instead, in the name of rigid adherence to procedure, this Court summarily denies Fullwood access to the relief to which he is entitled. In so doing, it robs the Great Writ of vitality to such an extent as to cause OCGA § 9-14-52 to violate the constitutional proscription against suspending the writ of habeas corpus.

Because justice has been thwarted and the body of the law has been wounded by the majority opinion's unnecessarily strict interpretation of OCGA § 9-14-52, I must dissent.

I am authorized to state that Presiding Justice Fletcher and Justice Sears join in this dissent.

SEARS, Justice, dissenting.

I also must dissent. As Presiding Justice Fletcher has previously

noted,[4] Georgia's Habeas Corpus Act was enacted with the specific intent of strengthening " 'state courts as instruments for the vindication of constitutional rights.' "[5] The majority's unnecessarily rigid adherence to the procedural requirements set forth in OCGA § 9-14-52 (b) will defeat that laudable goal, as this Court will now dismiss most of the applications for certificates of probable cause that are filed before us.

The majority opinion fails to consider that most of the men and women who file habeas applications with this Court are ill-suited for the daunting task of proceeding pro se in one of the most complex arenas of the law. In fact, an inordinate number of these petitioners are functionally illiterate, and they will largely be unable to comply with the majority's requirements. The majority's position thus results in an injustice to a segment of our society that is not able to adequately represent itself, and it does so, in my view, without a single state interest to support its position. In fact, interpreting our laws to facilitate a resolution on the merits of as many applications for certificates of probable cause as possible, while a somewhat tedious and time consuming exercise by the members of this Court, benefits the state's interest in efficiently handling habeas corpus cases,[6] and is consistent with "the strong public policy of this state favoring resolution of cases on their merits."[7]

Moreover, even assuming that habeas petitioners can manage to comply with the conditions imposed by the majority, forcing a petitioner to file both a notice of appeal in the trial court and an application for a certificate of probable cause to appeal in this Court within 30 days of the entry of an order denying him relief is cumbersome, difficult, and unnecessary. The purpose of requiring a notice of appeal to be filed in the habeas court is to enable the clerk of that court to prepare the habeas record. As recognized by the General Assembly, that record is necessary in order for this Court to be able to "consider fully the request for a certificate."[8] Similarly, it is necessary for a habeas petitioner to review the record in order to competently present his grounds for relief to this Court. But, requiring the habeas petitioner to file his application for a certificate within 30 days of the order denying him relief will force the petitioner, in most cases, to simultaneously file both his notice of appeal in the habeas court and his application for a certificate of probable cause in this

---

[4] *Davis v. Thomas*, 266 Ga. 835, 839 (471 SE2d 202) (1996) (Fletcher, P. J., concurring specially).

[5] *Davis*, 266 Ga. at 839 (Fletcher, P. J., concurring specially (quoting OCGA § 9-14-40)).

[6] See *Davis*, 266 Ga. at 839 (Fletcher, P. J., concurring specially).

[7] *Exxon Corp. v. Thomason*, 269 Ga. 761 (1) (504 SE2d 676) (1998).

[8] OCGA § 9-14-52 (b).

Court. Thus, the petitioner is forced to file his application for certificate of probable cause before the habeas record has even been prepared. Because the petitioner will not have the benefit of the record of his habeas proceedings in preparing his application, that application cannot possibly adequately present his constitutional claims. This result is entirely unnecessary, as this Court will have no record by which to review the application when it is filed. Instead, before reviewing the application, this Court must wait for the habeas court clerk's office to forward the record to it. Clearly, then, even if a habeas petitioner manages to comply with the majority's rule, that rule undermines the purpose of our habeas statutes of having this Court serve "as [an] instrument[ ] for the vindication of constitutional rights."[9] There is an old cliche that "hard cases make bad law," and therefore the law must be left as it is.[10] It is also said that "bad law makes hard cases," and therefore the law must be amended. The real truth lies somewhere between. The unfortunate circumstances of a particular case should never be an excuse for weakening a law that is sound.[11] But a law like § 9-14-52 (b), which is now being construed in such a manner as to create hard cases, is not worth preserving.[12]

I have long admired both our justice system's moral abhorrence against unconstitutional incarceration, and our system of laws designed to right such wrongs. Because the majority opinion unfortunately undermines this system, I must respectfully dissent.

I am authorized to state that Presiding Justice Fletcher joins in this dissent.

DECIDED JUNE 1, 1999 —
RECONSIDERATION DENIED JULY 6, 1999.

Stacy Fullwood, *pro se.*
*John C. Pridgen, District Attorney,* for appellee.

---

[9] OCGA § 9-14-40.
[10] See A. P. Herbert, *Uncommon Law,* 1936.
[11] Id.
[12] Id. Moreover, because the majority fails to properly construe the requirements of § 9-14-52 (b), I encourage the General Assembly to modify § 9-14-52 (b) by only requiring the filing of an application for a certificate of probable cause within 30 days of the date the habeas record is docketed in this Court.