## S09A1512. ROBERTS v. COOPER.
(691 SE2d 875)

HINES, Justice.

On October 28, 2002, Brandon Cooper pled guilty to armed robbery and aggravated assault, and on that same day was sentenced to two terms of ten years in prison, to be served concurrently. Subsequently, he filed a pro se petition for a writ of habeas corpus, which was received by the Superior Court of Washington County on July 2, 2008. Warden Stephen Roberts answered the petition and filed a motion to dismiss it as untimely under OCGA § 9-14-42 (c) (1), as the petition was not filed on or before July 1, 2008, as this Code provision requires. The habeas court denied the motion, declaring that the "mailbox rule" set out in *Massaline v. Williams*, 274 Ga. 552 (554 SE2d 720) (2001), applied to Cooper's petition, and it would thus be deemed filed when he properly delivered it to prison officials; the habeas court found that Cooper did so on June 27, 2008,

before the statutory deadline of July 1, 2008. Roberts secured a certificate of immediate review from the habeas court and applied to this Court for interlocutory appeal. We granted the application to address whether the habeas court erred in applying the mailbox rule to an initial petition in the habeas court. Finding that *Massaline* applies only to the situation addressed therein, we reverse.

Under OCGA § 9-14-52,[1] if a person being restrained by virtue of a sentence of a state court of record petitions for a writ of habeas corpus, is unsuccessful, and wishes to appeal, "he must file a written application for a certificate of probable cause to appeal with the clerk of the Supreme Court within 30 days from the entry of the order denying him relief"; he must "also file within the same period a notice of appeal with the clerk of the concerned superior court." OCGA § 9-14-52 (b). In *Massaline*, this Court announced a rule of appellate procedure by which, when such a petitioner is proceeding pro se, "his application for certificate of probable cause to appeal and notice of appeal will be deemed filed on the date he delivers them to the prison authorities for forwarding to the clerks of this Court and

---

[1] OCGA § 9-14-52 reads:

(a) Appeals in habeas corpus cases brought under this article shall be governed by Chapter 6 of Title 5 except that as to final orders of the court which are adverse to the petitioner no appeal shall be allowed unless the Supreme Court of this state issues a certificate of probable cause for the appeal.

(b) If an unsuccessful petitioner desires to appeal, he must file a written application for a certificate of probable cause to appeal with the clerk of the Supreme Court within 30 days from the entry of the order denying him relief. The petitioner shall also file within the same period a notice of appeal with the clerk of the concerned superior court. The Supreme Court shall either grant or deny the application within a reasonable time after filing. In order for the Supreme Court to consider fully the request for a certificate, the clerk of the concerned superior court shall forward, as in any other case, the record and transcript, if designated, to the clerk of the Supreme Court when a notice of appeal is filed. The clerk of the concerned superior court need not prepare and retain and the court reporter need not file a copy of the original record and a copy of the original transcript of proceedings. The clerk of the Supreme Court shall return the original record and transcript to the clerk of the concerned superior court upon completion of the appeal if the certificate is granted. If the Supreme Court denies the application for a certificate of probable cause, the clerk of the Supreme Court shall return the original record and transcript and shall notify the clerk of the concerned superior court and the parties to the proceedings below of the determination that probable cause does not exist for appeal.

(c) If the trial court finds in favor of the petitioner, no certificate of probable cause need be obtained by the respondent as a condition precedent to appeal. A notice of appeal filed by the respondent shall act as a supersedeas and shall stay the judgment of the superior court until there is a final adjudication by the Supreme Court; provided, however, that, while such case is on appeal, the petitioner may be released on bail as is provided in criminal cases except when the petitioner has been convicted of a crime which the Supreme Court has jurisdiction to consider on direct appeal. The right to bail and the amount of bond shall be within the discretion of the judge of the superior court in which the sentence successfully challenged under this article was originally imposed.

the superior court, respectively." *Massaline*, supra at 555 (3) (a).

After our 2001 decision in *Massaline*, the General Assembly, in 2004, amended OCGA § 9-14-42 to add subsection (c), which provides for a period of limitation in which a petitioner must file his initial petition for habeas relief. Under OCGA § 9-14-42 (c) (1), one who, like Cooper, was convicted of a felony before July 1, 2004, is required to file his petition for a writ of habeas corpus on or before July 1, 2008, absent exceptions not relevant here.[2] In deciding that *Massaline's* mailbox rule applied to OCGA § 9-14-42, the habeas court determined that the mailbox rule was to be applied to any pleading regarding habeas corpus. However, this is incorrect.

Since our decision in *Massaline*, we have emphasized that the mailbox rule announced therein is one of appellate procedure in the context of habeas corpus petitions for certificates of probable cause in this Court, not a rule of general application. In *Riley v. State*, 280 Ga. 267, 268 (626 SE2d 116) (2006), we stated:

> *Massaline*, however, by its explicit terms applies *only* in the narrow context of *habeas corpus appeals* to permit a pro se

---

[2] OCGA § 9-14-42 reads:

(a) Any person imprisoned by virtue of a sentence imposed by a state court of record who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of this state may institute a proceeding under this article.

(b) The right to object to the composition of the grand or trial jury will be deemed waived under this Code section unless the person challenging the sentence shows in the petition and satisfies the court that cause exists for his being allowed to pursue the objection after the conviction and sentence have otherwise become final.

(c) Any action brought pursuant to this article shall be filed within one year in the case of a misdemeanor, except as otherwise provided in Code Section 40-13-33, or within four years in the case of a felony, other than one challenging a conviction for which a death sentence has been imposed or challenging a sentence of death, from:

(1) The judgment of conviction becoming final by the conclusion of direct review or the expiration of the time for seeking such review; provided, however, that any person whose conviction has become final as of July 1, 2004, regardless of the date of conviction, shall have until July 1, 2005, in the case of a misdemeanor or until July 1, 2008, in the case of a felony to bring an action pursuant to this Code section;

(2) The date on which an impediment to filing a petition which was created by state action in violation of the Constitution or laws of the United States or of this state is removed, if the petitioner was prevented from filing such state action;

(3) The date on which the right asserted was initially recognized by the Supreme Court of the United States or the Supreme Court of Georgia, if that right was newly recognized by said courts and made retroactively applicable to cases on collateral review; or

(4) The date on which the facts supporting the claims presented could have been discovered through the exercise of due diligence.

(d) At the time of sentencing, the court shall inform the defendant of the periods of limitation set forth in subsection (c) of this Code section.

> prisoner's notice of appeal to be deemed filed on the date delivered to prison authorities. Georgia's prison mailbox rule mitigates "the considerable challenges presented to a pro se prisoner's ability to pursue his constitutional right to habeas corpus . . . ," and limits the remedial nature of the rule to solely address "the unique circumstances faced by pro se prisoners who bring their habeas corpus petitions *to this Court*." [Cit.]

(Emphasis supplied.) This attempt to focus judicial attention on the proper scope of the *Massaline* decision has borne some fruit. See *Lewis v. State*, 300 Ga. App. 586 (685 SE2d 485) (2009) (Mailbox rule does not apply to notice of appeal from a motion to declare a conviction and sentence null and void.); *McCroskey v. State*, 291 Ga. App. 15 (660 SE2d 735) (2008) (Mailbox rule does not apply to a notice of appeal from a conviction in a criminal case.). However, as this case demonstrates, it appears that reiteration regarding the scope of the mailbox rule is necessary.[3] Thus, we take this opportunity to repeat that the mailbox rule stated in *Massaline* is to be applied only in the circumstances presented therein, that is, the attempted appeal of a pro se habeas petitioner operating under OCGA § 9-14-52.

Cooper contends that, as a matter of statutory interpretation, we should conclude that the General Assembly intended that the mailbox rule be extended to include initial habeas filings when it amended OCGA § 9-14-42 (c) in 2004. However, this argument misses the mark. Certainly "our legislature is presumed to enact statutes with full knowledge of existing law, including court decisions." *Dove v. Dove*, 285 Ga. 647, 649 (4) (680 SE2d 839) (2009). But, when the General Assembly amended OCGA § 9-14-42 (c) in 2004, this Court's then-existing precedent was *Massaline*, which adopted the mailbox rule *only* as to pro se prisoners in habeas corpus *appeals*. We will not assume that the General Assembly in 2004 anticipated some extension of the mailbox rule and tacitly approved of such an extension. Rather, it is plain that the General Assembly accepted what this Court said in *Massaline*; namely, that the mailbox rule applies only to prisoners in habeas corpus appeals. Had the General Assembly desired to extend the mailbox rule, it could have done so, but it did not.

Although Cooper advances various arguments for an extension

---

[3] We note that in *Taylor v. Williams*, 528 F3d 847 (11th Cir. 2008), the United States Court of Appeals for the Eleventh Circuit concluded, incorrectly, that under the rule announced in *Massaline*, this Court would apply the rule to the filing of the initial petition by a pro se habeas petitioner.

of the mailbox rule to any filing by a habeas petitioner, at any level,[4] we do not find them persuasive. There is no valid justification for this Court to broaden the mailbox rule. Rather, "[t]he Civil Practice Act, OCGA § 9-11-1 et seq., applies in habeas corpus proceedings with regard to questions of pleading and practice. [Cit.]" *State v. Jaramillo*, 279 Ga. 691, 693 (2) (620 SE2d 798) (2005). Under the Civil Practice Act, an action is initiated "by filing a complaint *with the court*." (Emphasis supplied.) OCGA § 9-11-3 (a). In *Massaline*, this Court certainly did not attempt to re-write that legislative specification. Rather, *Massaline* noted that this Court has, under its own Rule 13, interpreted what is meant by statutory references to filing with the Clerk of the Supreme Court of Georgia in the appellate arena. Supra at 554 (2); see OCGA § 9-14-52 (b). A ruling by this Court that *Massaline's* mailbox rule should be extended beyond the narrow appellate situation it was created to address to any and all filings that come under the ambit of the Civil Practice Act would usurp the General Assembly's legislative choice. Any such sweeping change is a matter for that body.

In summary, the mailbox rule does not apply to all pro se prisoner litigants. The rule pertains to appellate jurisdiction. See *Ferguson v. Freeman*, 282 Ga. 180, 182 (1) (646 SE2d 65) (2007). It does not aid those who are represented by counsel. It affords no relief to those who seek appeals in arenas other than habeas corpus. It is a judicially-created rule of accommodation. A pro se felony habeas petitioner has four years to prepare and submit his initial petition; after a denial of that petition, he has 30 days to prepare and submit his application for a certificate of probable cause in this Court, and to prepare and submit his notice of appeal in the habeas court. The difference between the length of the two periods appears to us to have import. We will continue to apply the mailbox rule only in the confines we have previously set forth; the pursuit of an appeal by one who falls under the requirements of OCGA § 9-14-52.

*Judgment reversed. All the Justices concur, except Hunstein, C. J., and Benham and Thompson, JJ., who dissent.*

HUNSTEIN, Chief Justice, dissenting.

The majority fails to acknowledge that if the pro se prisoner mailbox rule is applied to the filing of an appeal from the denial of a

---

[4] Cooper asserts that pro se prisoners seeking to initiate their habeas petitions and habeas appellants face the same issues of access to the courts that this Court outlined in *Massaline*, regardless of the time available to them to gain that access. Cooper also notes that constitutional rights are being raised in initial habeas petitions, and, by contrast, there is no constitutional right to appeal a habeas court's decision. See *Fullwood v. Sivley*, 271 Ga. 248, 252 (517 SE2d 511) (1999).

habeas petition as a matter of "appellate procedure," Op. at 659, it is even more important that it be applied to the filing of the habeas petition itself, when the constitutional right to seek such relief is at stake. Accordingly, I must dissent.

Given the "unique obstacles faced by those who are both imprisoned and unrepresented," (footnote omitted) *Massaline v. Williams*, 274 Ga. 552 (1) (554 SE2d 720) (2001), this Court has found persuasive the policy considerations supporting a mailbox rule that were set forth by the United States Supreme Court in *Houston v. Lack*, 487 U. S. 266 (108 SC 2379, 101 LE2d 245) (1988):

> Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the . . . deadline. Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped "filed" on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the

date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access — the prison authorities . . . .

Id. at 270-271 (II);[5] see *Massaline*, supra at 552-553 (1).

Although these considerations exist for all types of pro se inmate filings, the majority correctly notes that we have to this point limited application of the pro se prisoner mailbox rule in Georgia to "the narrow context of habeas corpus appeals." *Riley v. State*, 280 Ga. 267, 268 (626 SE2d 116) (2006). However, I would recognize that, beyond the dictates of fundamental fairness underlying our decision in *Massaline*, supra, 274 Ga. at 552, the constitutional right of access to the Great Writ of habeas corpus is at stake when a pro se prisoner attempts to file a habeas petition. See Ga. Const. of 1983, Art. I, Sec. I, Par. XV (writ of habeas corpus "shall not be suspended unless, in case of rebellion or invasion, the public safety may require it").[6] OCGA § 9-14-42 (c) provides that a habeas action must be "filed" within certain time constraints, and we have held that a statutory requirement for a document to be "filed" may be satisfied by an event other than delivery into the hands of the clerk of the court. *Massaline*, supra, 274 Ga. at 554 (2). Given our historical solicitude for the constitutional right to seek habeas corpus relief,[7] it follows that the mailbox rule should be applied to the filing of the habeas petition itself, rather than to merely an appeal therefrom.

This extended application of the mailbox rule would be consistent with our constitutional guarantee of equal access to the courts. Ga. Const. of 1983, Art. I, Sec. I, Par. XII; see also *Howard v. Sharpe*, 266 Ga. 771 (1) (470 SE2d 678) (1996) (regulations and restrictions barring adequate, effective and meaningful access to courts by prisoners are unconstitutional).

Meaningful access [to the courts] means that state authorities must ensure that inmates have "'a reasonably ad-

---

[5] *Houston v. Lack* dealt with a pro se prisoner's late filing of a notice of appeal from the dismissal of his federal habeas corpus petition, but the mailbox rule now encompasses the filing of a pro se federal habeas petition as well as a notice of appeal. *Taylor v. Williams*, 528 F3d 847, 849, n. 3 (11th Cir. 2008).

[6] It is noteworthy that the dissent in *Massaline* recognized the constitutional right to habeas corpus, but based its rejection of the mailbox rule in the context of an appeal from the denial of a habeas corpus petition in part on the lack of a constitutional right to bring an appeal. *Massaline*, supra, 274 Ga. at 556.

[7] Georgia was the first jurisdiction to include a specific right to the Great Writ in its constitution. *Fullwood v. Sivley*, 271 Ga. 248, 255 (517 SE2d 511) (1999) (Benham, C. J., dissenting).

equate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" [Cits.] For example, a state may not interfere with an inmate's attempt to prepare or file legal documents . . . . [Meaningful access] is simply the right of an inmate to raise his claims and be heard.

*Gibson v. Turpin*, 270 Ga. 855, 858 (1) (513 SE2d 186) (1999). Beyond the obvious inequity as to access between inmate and non-inmate petitioners, failure to apply the mailbox rule to the filing of a pro se prisoner's habeas petition

> would interject a level of arbitrariness [between inmate petitioners] that could undermine equal protection and equal access to the courts. For example, two pro se inmates who delivered a document to prison officials at the same time, seeking the same relief, and facing the same court deadline, [are] treated quite differently based entirely on happenstance. One inmate's petition might make it to the courthouse on time, while the other's might be delayed for unknown reasons. The first would obtain a full hearing, while the second would be denied relief. Such arbitrariness cannot fairly be characterized either as equal protection or equal access to the courts . . . .

*Haag v. Florida*, 591 S2d 614, 617 (Fla. 1992). The majority opines that the difference between the 30-day deadline for filing a notice of appeal from a habeas ruling, see OCGA § 9-14-52 (b), and the four-year deadline for filing a habeas petition arising from a felony conviction, see OCGA § 9-14-42 (c), "appears . . . to have import." Op. at 661. I disagree for several reasons. First, the relatively short time frame for filing an appeal was not a consideration in *Massaline*, supra, 274 Ga. at 552. Second, given the lack of control an inmate has over his habeas petition once it has been delivered to prison authorities, he "can never be *sure* that it will ultimately get stamped 'filed' on time," *Houston v. Lack*, supra, 487 U. S. at 271, no matter how early in the four-year period it is submitted. Finally, one seeking to file a habeas petition has the right to utilize the full amount of time provided by statute, and "[t]he state cannot subtract from that . . . period through the failure to deliver a pro se inmate's petition until after the period has expired, even if the delay is through honest oversight." *Haag*, supra, 591 S2d at 617.

Because the majority fails to give proper consideration to the constitutional rights at issue in this case, I respectfully dissent.

I am authorized to state that Justice Benham and Justice Thompson join in this dissent.

DECIDED MARCH 15, 2010.

*Daniel M. King, Jr., Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.

*Sarah L. Gerwig-Moore, Martin Snow, Stuart E. Walker*, for appellee.

*James C. Bonner*, amicus curiae.