302 Ga. 763
FINAL COPY

S16H1197.  REDMON v. JOHNSON.

PER CURIAM.

Pursuant to OCGA § 9-14-52, we hereby summarily deny petitioner's application for a certificate of probable cause to appeal the habeas court's final order denying his petition for habeas corpus challenging his criminal convictions.  The Court similarly denies summarily the applications of another 20 habeas petitioners today, as we have denied thousands of such applications in the past (while granting a few each year, including two today).

We normally issue these summary denials of habeas applications by unpublished order.  However, there appears to be significant misunderstanding of the process by which this Court renders these decisions and the import of our decisions, both among repeat litigants in state habeas proceedings and among the federal courts that sometimes see the same cases —  particularly death penalty cases —  later in federal habeas corpus proceedings brought under 28

USC § 2254.  See Wilson v. Warden, 834 F3d 1227 (11th Cir. 2016) (en banc), cert. granted sub nom. Wilson v. Sellers, __ U. S. __ (137 SCt 1203, 197 LE2d 245) (2017) (No. 16-6855).  While we offer no view on the question of federal habeas law presented in Wilson, the answer to that question appears to depend in part on presumptions about this Court's summary denials of habeas applications, and those presumptions should be founded on reality rather than supposition, inference, or misinformation.  We therefore take this opportunity to explain.

1.    Our Habeas Application Review Process.

This Court gives every habeas application careful and independent consideration.  A habeas corpus petitioner seeking to appeal a final superior court order denying his petition must file not only a timely application in this Court for a certificate of probable cause to appeal, but also a timely notice of appeal in the habeas court.  See OCGA § 9-14-52 (b); Fullwood v. Sivley, 271 Ga. 248, 250 (517 SE2d 511) (1999).  The latter requirement leads to the record being forwarded to this Court so that it may be considered along with the

application.[1]

In every habeas case, an attorney from our Central Staff, under the general supervision of the Justice to whom the case is assigned, reviews the application and drafts a memorandum for the Court. Where there is an obvious procedural defect that will result in the application being dismissed for lack of appellate jurisdiction, such as an untimely application or notice of appeal, the memorandum may be just a paragraph. But in most cases, the memoranda are based on a review of all pertinent portions of the record and present a detailed, multi-page discussion of the proceedings below, the habeas court's order, the arguments presented in the application, and the factual and legal merits of each argument. In habeas applications in death penalty cases, which are drafted by Central Staff attorneys who specialize in death penalty matters, the memoranda regularly exceed 50 single-spaced pages.

Unless recused, every Justice reviews and votes on every habeas application. Until recently, every habeas case was discussed at a banc

---

[1] The statutory requirements that habeas hearings must be transcribed, see OCGA § 9-14-50, that the habeas court's order must include written findings of fact and conclusions of law as part of the record, see OCGA § 9-14-49, and that the record (including the transcript, if designated) must be sent to this Court all serve the purpose of enabling us "to consider fully the request for a certificate" authorizing an appeal, OCGA § 9-14-52 (b).

conference of the Court. Now, using a process modeled on the U.S. Supreme Court's process for discussing petitions for certiorari, our Court discusses any habeas case that a single Justice lists for discussion, with the other cases placed on a unanimous consent list voted on collectively. The discussions sometimes lead to further consideration and additional memoranda on cases, which are then brought back for discussion at subsequent conferences. At the end of this process, the Court decides whether to grant the habeas application and thus initiate the full appeal process, which includes briefing, the opportunity for oral argument, and the drafting, consideration, approval, and issuance of a published, precedential opinion.

   2.     The Import of Our Summary Denial of a Habeas Application.

Under this Court's Rule 36, if a majority of the Justices determine that the application shows that the habeas case has "arguable merit," the application will be granted. It is important to understand what "arguable merit" means in this context: it means that the petitioner has a fair probability of ultimately prevailing in his case by obtaining habeas relief. Our decision to deny a habeas

4

application is therefore squarely a decision on the merits of the case.[2]

Our determination of whether a full appeal should be granted is focused primarily on the correctness of the habeas court's final judgment denying relief, not on the quality of the habeas court's order explaining that judgment. If it is clear that the habeas court's judgment would be affirmed after the full appellate process, then — except in the rare circumstances discussed below — this Court will deny the petitioner's application to initiate that extensive process and will devote our limited decisional resources to other matters. We do not consider only the substantive merits of the case. If a procedural defect under Georgia statutory or decisional law would prevent the habeas court from properly granting relief to the petitioner, or would prevent this Court from properly granting relief on appeal, then the application lacks arguable merit. See generally Tolbert v. Toole, 296 Ga. 357, 361 n.8 (767 SE2d 24) (2014).

---

[2] Appeals in Georgia habeas cases are sometimes referred to as "discretionary," but that means only that a full appeal is not provided as of right in every habeas case. If the Court determines based upon its review of an application and the record that a habeas case has arguable merit, then the Court has no discretion: the application must be granted. The same is true of the many appeals subject to OCGA § 5-6-35, under which the appellate court must grant an application to appeal before a full appeal may proceed. While commonly called "discretionary appeals," under this Court's Rule 34 (1), if the application in such a case shows that "[r]eversible error appears to exist," the application "shall be granted." See Northwest Social and Civic Club, Inc. v. Franklin, 276 Ga. 859, 860 (583 SE2d 858) (2003).

In the course of our independent review of the applications and records in habeas cases, the Court occasionally identifies factual and legal errors in habeas court orders — as we have in this case. In death penalty cases, which typically involve extensive factual records and present a multitude of complicated legal issues addressed in lengthy habeas court orders, identifying at least a few such errors is a routine occurrence. If the Court decides that such errors, separately or collectively, would arguably result in the order in question being reversed or vacated if an appeal were granted, the disposition is straightforward: the Court grants the application.[3] On many occasions, however, including in this case, the factual discrepancies identified are immaterial, and the legal mistakes the habeas court appears to have made — or even obviously made — would not amount to reversible error. Indeed, in many such cases, the errors would not even need to be addressed in an opinion affirming the habeas court's order.[4]

---

[3] After engaging in the full appellate process, the Court may determine that the issue that had *arguable* merit did not have *actual* merit and therefore may affirm the habeas court's order denying relief. See, e.g., Trim v. Shepard, 300 Ga. 176 (794 SE2d 114) (2016); Rozier v. Caldwell, 300 Ga. 30 (793 SE2d 73) (2016).

[4] This Court's ability to spot errors made by habeas judges casts no aspersions on our hard-working colleagues in the superior courts. A primary purpose of multi-member appellate courts — particularly ones as large as this Court and with the subject-matter expertise we have developed regarding habeas corpus cases — is to bring our collective competence to the review of decisions made by individual trial court judges. Indeed, the harmless-error and right-for-any-reason doctrines

There are many examples of inconsequential errors, but among the most common are the following:

- The habeas court rejects a claim both on a procedural ground and, alternatively, on the substantive merits. This Court determines that one of those rulings appears factually or legally erroneous, but the other is correct, so an appeal would result in the habeas court's judgment being affirmed on the correct ground.

- In addressing an ineffective assistance of counsel claim under Strickland v. Washington, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984), the habeas court rules that counsel did not perform deficiently as alleged. That ruling appears to be erroneous, but this Court determines based on our review of the record that no prejudice resulted from the deficient performance, so an appeal would result in affirming the habeas court's judgment. See id. at 697; Rozier v. Caldwell, 300 Ga. 30, 31-32 (793 SE2d 73) (2016).

- In addressing other claims that require the petitioner to prove each element of a multi-part test, such as a claim under Brady v. Maryland, 373 U.S. 83 (83 SCt 1194, 10 LE2d 215) (1963), the habeas court makes factual or legal errors regarding the petitioner's proof of one element but correctly concludes (or the record clearly shows) that the petitioner has not proved another required element. An appeal would result in this Court's affirming the habeas court's judgment.

- The habeas court misstates a legal standard in one part of its order, but recites the standard correctly elsewhere in the order, and it is clear that the judgment is correct applying the right standard.

routinely applied in American appellate law are recognitions that trial courts may make a variety of errors identified by appellate courts that do not undermine the correctness of the ultimate judgments.

7

- In addressing a habeas petition with multitudinous claims, the habeas court's order fails to explicitly rule on a claim, but the record shows that the claim is entirely meritless.

In these and similar situations, the habeas application is properly denied as lacking arguable merit, as an appeal would have no realistic chance of succeeding. This Court still has discretion to grant an application in such a case — as well as in cases where the habeas court has made no apparent error. We may grant an appeal if the case presents an issue of great concern, gravity, or importance to the public; or if there is a need to establish precedent on an issue; or if the Court has noticed that a number of habeas judges have made a similar mistake, indicating the need for existing precedent to be reiterated or clarified even though the mistake was harmless in the case at hand.[5]

However, in the mine run of cases where the governing law is settled and the habeas court's judgment denying relief would stand notwithstanding the apparent factual or legal errors in its order, this Court does not grant the habeas

---

[5] Sometimes the Court also notices that a specific habeas judge has repeatedly made a non-reversible error and issues a "speaking" denial order identifying the error, which will be received by the judge but not published. The Court also occasionally issues short unpublished orders granting an application, vacating the habeas court's order, and remanding the case with direction to comply with a procedural requirement such as holding a hearing to resolve disputed facts, preparing a transcript of the hearing, or including adequate findings of fact and conclusions of law in the order.

application. No habeas court order has precedential authority; indeed, Georgia habeas court orders are almost never even posted by legal research services. And the burdens of invoking the full appellate process, including writing opinions simply to point out factual or legal errors that do not affect the judgment, are significant for this Court. We issue about 350 published opinions each year, all en banc, meaning that each Justice (seven of us until 2017, nine now) must evaluate an opinion a day and author 35 to 50 majority opinions a year, with the help of only two law clerks in each chambers.[6] Moreover, the Georgia Constitution requires this Court to issue its decision within the two terms of court after an appeal is docketed (which means within about eight months, given our three terms per year). See Ga. Const. of 1983, Art. VI, Sec. IX, Par. II. And our reasoned decisions are precedent binding on all other Georgia courts, see id., Art. VI, Sec. VI, Par. VI, so issuing opinions where the relevant law is already well-established runs the risk of creating inconsistencies.

---

[6] By way of comparison, the U.S. Supreme Court has issued 80 or fewer merits opinions in recent years, with the Justices there (each assisted by four or five law clerks) authoring fewer than 10 majority opinions per year. In addition to deciding cases by opinion, each year this Court's Justices also review and vote on hundreds of petitions for certiorari and applications for discretionary and interlocutory appeal as well as habeas applications, and we also have extensive administrative duties related to the Court's role in administering Georgia's justice system.

For these reasons, it should not be presumed that when this Court summarily denies an application to appeal an order denying habeas corpus relief, we necessarily agree with everything said in that order. Our silence does *not* imply consent to every aspect of the habeas court's reasoning, and this Court does *not* have a "practice of issuing a reasoned decision denying an application for a certificate of probable cause when it disagrees with the superior court's reasoning." Wilson, 834 F3d at 1248 (Jill Pryor, J., dissenting). Instead, based upon our careful and independent review of habeas applications and records, we regularly identify factual and legal errors in orders that would not, on proper application of the governing law to the factual record, result in different judgments were we to grant full appeals and issue fully reasoned opinions. Put another way, our summary denials of habeas applications should be understood, like summary affirmances by the Supreme Court of the United States and the federal circuit courts, as approving only the judgment of the court below, not all of its reasoning. See, e.g., Comptroller of Treasury of Maryland v. Wynne, ___ U.S. ___ (135 SCt 1787, 1801, 191 LE2d 813) (2015) ("'[A] summary affirmance is an affirmance of the judgment only,' and 'the rationale of the affirmance may not be gleaned solely from the opinion below.'" (citation

omitted)); <u>DeShong v. Seaboard Coast Line R. Co.</u>, 737 F2d 1520, 1523 (11th Cir. 1984) (explaining that a summary affirmance "only approve[s] the result reached in the district court without expressly approving the opinion or adopting its reasons").

Noting the confusion that was emerging in the federal courts, we have alluded in some recent unpublished orders to the nature of our review of habeas applications, but without the detail provided in this opinion.[7] It has also been suggested that we could revise our standard order so that, instead of simply saying that the habeas application is "denied," it says something like "denied based upon our independent review of the application, any response, and the

---

[7] The handling of habeas cases described in this opinion is not new, however; it has been this Court's practice for as long as can be recalled by the current Justices and by staff attorneys who have served here going back to the 1980s. In this regard, we note that a handful of retired Justices from the supreme courts of three other states, who have no knowledge of the operations of this Court, and one former Justice of this Court, who retired in 2005 and has not since had an active habeas practice, have asserted that in their experience, "silent denial of discretionary review can fairly be read to signal agreement with the underlying decision — not just the result . . . but the reasoning [of the habeas trial court] as well. And where [they] disagreed, either with the result or the reasoning, [they] would say so." Brief of Retired State Supreme Court Justices as *Amicus Curiae* in Support of Petitioners in <u>Wilson v. Sellers</u>, No. 16-6855, at 9. They also endorse a "presumption that in cases where [the Georgia Supreme Court] issues summary denials it has adopted the trial court's reasoning — a presumption that is fully in accord with [their] own experience." Id. at 14. We cannot speak to the practices in other states, but as explained in this opinion, this Court's summary denial of a habeas application is — and has long been — a decision on the merits of the habeas case rather than a "discretionary" decision, and the proposition that "in cases where [the Georgia Supreme Court] issues summary denials it has adopted the trial court's reasoning" is simply incorrect.

entire record, notwithstanding any factual or legal errors in the habeas court's order that we may have identified but which would not result in a different judgment." But we see no value added by such verbiage, especially now that we have explained what we mean when we say summarily that an application for a certificate of probable cause to appeal the denial of habeas corpus is "denied."

Application denied. All the Justices concur, except Grant, J., not participating.

Decided January 16, 2018.

Habeas corpus application. Dooly Superior Court. Before Judge Hughes.

Jarvis Redmon, <u>pro se.</u>

<u>Christopher M. Carr, Attorney General, Patricia B. Attaway Burton,</u> <u>Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General,</u> for appellee.